258 N.J. Super. 523 (1992)
610 A.2d 878
JAY THORPE AND KIM THORPE, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
PATROLMAN HARVEY COHEN, INDIVIDUALLY AND AS A POLICE OFFICER OF HOWELL TOWNSHIP POLICE DEPT., HOWELL POLICE DEPARTMENT, HARVEY MORRELL, CHIEF OF HOWELL TOWNSHIP POLICE DEPARTMENT, JOHN DOE, PATROLMAN COHEN'S IMMEDIATE SUPERVISOR, HOWELL TOWNSHIP, A MUNICIPALITY OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 9, 1992.
Decided July 22, 1992.
*524 Before Judges STERN and KEEFE.
Gelzer, Kelaher, Shea, Novy & Carr, attorneys for appellants (Peter J. Van Dyke, on the brief).
Widman & Cooney, attorneys for respondents (Matthew R. Kiffin, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
*525 Plaintiffs appeal from the grant of summary judgment on May 17, 1991, in favor of defendants, a police officer, police chief, municipal police department and municipality. The complaint was dismissed because of plaintiffs' failure to meet "the threshold" requirement of N.J.S.A. 59:9-2(d) which provides:
No damages shall be awarded against a public entity or public employee for pain and suffering resulting from an injury; provided, however, that this limitation on recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00.
Plaintiffs contend that Jay Thorpe's medical expenses for the "permanent loss of a bodily function" exceed $1,000;[1] that even if the injury did not constitute "a permanent loss of a bodily function," the preclusion embodied in N.J.S.A. 59:9-2(d) relates only to recovery for "pain and suffering," and that "the preclusion of N.J.S.A. 59:9-2(d) does not bar Jay Thorpe from recovering an award for his permanent injuries even if it bars an award for pain and suffering."
It was uncontested, for purposes of the motion for summary judgment, that the treating physician, Dr. Munir Ahmed, reported that plaintiff Jay Thorpe suffered a "chronic lumbosacral sprain" and "approximately 15% permanent disability." Doctor Ahmed's bill totalled $340.00 for visits and a "molded" corset over a period of time from February 1987 through May 1987 and then for one more visit in October 1989. There was also a bill for physical therapy of $820.00. Therefore, the bills for medical expenses aggregated more than $1,000 for "medical treatment expenses." The issue before us, therefore, is whether plaintiff has presented a sufficient showing of "permanent loss of a bodily function" to survive the motion for summary judgment.
*526 For purposes of the summary judgment motion, we must accept that plaintiff was pulled out of a car, and assaulted with a gun and excessive force by Police Officer Cohen incident to a motor vehicle stop. For purposes of the motion, we must also assume culpability and proximate cause. Dr. Ahmed's report, on which plaintiff relies, states:
Mr. Thorpe reported difficulty with performing "basic" tasks such as lifting his child and skiing because they hurt his lower back.
Clinical examination, however, reveals straight leg raising test to be negative. No motor sensory deficit was elicited. There did not appear to be any evidence of disc herniation or of any other severe problems. Other systemic review was unremarkable and non-contributory.
It is my opinion that Mr. Thorpe is left with a Chronic Lumbosacral Sprain. There is nothing further orthopedically to be done for that. He has a probably 15% permanent disability with regard to the lower back. This disability is functional and he is discharged from further care to come back if any problems arise. His prognosis is satisfactory. (emphasis in original).
We find the question presented to be in many ways similar to the "verbal threshold" issues involved with respect to the automobile "no fault" law, N.J.S.A. 39:6A-8(a). In Oswin v. Shaw, 250 N.J. Super. 461, 595 A.2d 522 (App.Div. 1991), certif. granted, 127 N.J. 552, 606 A.2d 365 (1991), we considered the right of a plaintiff to sue for "non-economic loss" where the plaintiff claimed a "significant limitation of use of a bodily function" and "permanent loss of use or consequential limitation of use." Id. 250 N.J.Super at 465, 467, 595 A.2d 522. Plaintiff there insisted that she had the right to pursue her action "for disability and pain and suffering." Id. at 467, 595 A.2d 522. She had been taken to an emergency room after the accident and suffered from "headaches and pain in the back of her neck." Id. at 469, 595 A.2d 522. She also suffered from a "foraminal encroachment," which was not "specifically related to the accident" in the report of the treating doctor, and from spasms, but no fracture or dislocation was observed. Id.
We found that there was no "permanent" injury. Rather, plaintiff Oswin suffered only from "soft tissue" injuries for which plaintiff was treated 32 times by chiropractic manipulation. The doctor presented a report claiming "permanency" *527 the statutory prerequisite to sustain the cause of action, but the report did not specify any permanent restriction of cervical motion or other objective indicia of a permanent injury. In those circumstances we found that the issue was properly decided by the judge before trial and that the threshold had not been met. We concluded that there was no "significant permanent injury in the form of a significant limitation of use of a bod[ily] function." Id. at 470, 595 A.2d 522. We noted in that context that the injury did not have "a serious impact on the plaintiff and her life." Id. See also Brown v. Puente, 257 N.J. Super. 203, 208, n. 1, 608 A.2d 377 (App.Div. 1992) (concurring "fully in the broad summary judgment standard employed by Oswin in determining whether the injuries, as a matter of law, are not sufficiently serious, within the statutory perception, to warrant continuation of the action.")
As knowledgeable commentators have noted with respect to the "threshold" issue under N.J.S.A. 59:9-2(d):
[t]o be considered "permanent" within the meaning of the subsection, such injury must constitute an objective impairment such as a fracture. LaBarrie v. Housing Auth. of Jersey City, 143 N.J. Super. 61, 64, 362 A.2d 624 (Law Div. 1976). Without such objective abnormality, a claim for permanent injury consisting of "impairment of plaintiff's health and ability to participate in activities" is merely a disguised claim for pain and suffering. Id. In Ayers v. Jackson Tp., [106 N.J. 557, 571, 525 A.2d 287 (1987)], it was held that interference with claimant's "quality of life," i.e., inconvenience and disruption of daily activities is objective injury and is not "pain and suffering" subject to the restrictions of this subsection. [Margolis and Novack, Claims Against Public Entities (1990), comment N.J.S.A. 59:9-2(d) (emphasis added)].
In Ayers v. Jackson Tp., 106 N.J. 557, 571-72, 525 A.2d 287 (1987) the Supreme Court upheld an award for "quality of life" damages, notwithstanding the claim that N.J.S.A. 59:9-2(d) barred it. The Court stated that:
The Tort Claims Act's ban against recovery of damages for "pain and suffering resulting from any injury" is intended to apply to the intangible, subjective feelings of discomfort that are associated with personal injuries. It was not intended to bar claims for inconvenience associated with the invasion of a property interest.
* * * * * * * *

*528 Accordingly, we conclude that the quality of life damages represent compensation for losses associated with damage to property, and agree with the Appellate Division that they do not constitute pain and suffering under the Tort Claims Act. (emphasis added).
On the other hand, the Court held that the "claims for emotional distress [damages] are encompassed by the term `injury' in N.J.S.A. 59:9-2(d)" and also dismissed the claim for "unquantified enhanced risk of disease," id. at 575, 598, 525 A.2d 287. Further, while not discussing N.J.S.A. 59:9-2(d) directly, the Court also held that "the cost of medical surveillance is a compensable item of damages" where necessary to monitor a significant exposure to chemicals or toxic substances. Id. at 606, 525 A.2d 287. Ayers, then, allows recovery for economic loss and out-of-pocket expenses and not for personal injuries themselves, in the absence of satisfying the threshold. Presumably, the threshold would have to be satisfied before a suit can be commenced or recommenced against a public entity or official for damages based on development of actual physical injuries. See also Srebnik v. State, 245 N.J. Super. 344, 349-52, 585 A.2d 950 (App.Div. 1991); Marion v. Borough of Manasquan, 231 N.J. Super. 320, 330-332, 555 A.2d 699 (App.Div. 1989). We do not read Ayers as addressing the issues presented in this case.
The wording of N.J.S.A. 59:9-2(d) precludes only the award of damages for "pain and suffering." It does not preclude damages for any other claim or injury. The comment to N.J.S.A. 59:9-2(d) provides:
The limitation on the recovery of damages in subparagraph (d) reflects the policy judgment that in view of the economic burdens presently facing public entities a claimant should not be reimbursed for non-objective types of damages, such as pain and suffering, except in aggravated circumstances  cases involving permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000. The limitation that pain and suffering may only be awarded when medical expenses exceed $1,000 insures that such damages will not be awarded unless the loss is substantial. (emphasis added).
The comments to the Act, taken from the Report of the Attorney General's Task Force on Sovereign Immunity  1972, "accompanied *529 the Act during its consideration by the Legislature [and] have the precedential weight and value of legislative history." Rochinsky v. State of N.J. Dept. of Trans., 110 N.J. 399, 407 n. 4, 541 A.2d 1029 (1988). We read the comment as persuasive and conclude that Thorpe's claim for pain and suffering is barred in the absence of an objective injury beyond the type involved here. And given the policy behind the Tort Claims Act which requires evaluation of "whether an immunity applies and if not, should liability attach [with the hope that] in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities," Task Force comment to N.J.S.A. 59:2-1 (emphasis in original); see also Weiss v. New Jersey Transit, 128 N.J. 376, 379, 608 A.2d 254 (1992); Rochinsky v. State, supra, 110 N.J. at 407-408, 541 A.2d 1029, we conclude that the "threshold" issue was properly resolved by the judge before trial, particularly because there is no dispute of fact, as opposed to a legal conclusion based thereon, and there is no need for an evidentiary determination. See Oswin v. Shaw, supra; cf. Brown v. Puente, 257 N.J. Super. at 212-13, 608 A.2d 377, supra. See also LaBarrie v. Housing Auth. of Jersey City, 143 N.J. Super. 61, 65, 362 A.2d 624 (Law Div. 1976) ("A failure to meet the threshold requirements of N.J.S.A. 59:9-2(d) can be disposed of by summary judgment.")[2]
*530 We also reject the appealing argument that "even if the plaintiff is not entitled to an award for pain and suffering, he is entitled to an award for his permanent injuries." As Margolis and Novack have noted:
Limitations are also placed upon recovery of damages for pain and suffering. To recover such damages a claimant must suffer permanent injury and incur medical expenses in excess of $1,000. If the $1,000 threshold is not met, but permanent injury has been sustained, a claimant may recover damages for the injury, but not for pain and suffering. The collateral source rule does not apply and no subrogation claim may be brought against the public entity or employee. [Introduction at xi].
See also, Peterson v. Edison Tp. Bd. of Ed., 137 N.J. Super. 566, 350 A.2d 82 (App.Div. 1975), where we held that only the claim for pain and suffering, not permanent injuries, was precluded by plaintiff's failure to meet the $1,000 threshold.
We do not, however, find any legislative intent to permit a claim for disability or bodily injury when the threshold is not met due to the absence of an objective injury, as opposed to the medical expense. In LaBarrie v. Housing Auth. of Jersey City, supra, 143 N.J. Super. at 64, 362 A.2d 624 (Law Div. 1976), plaintiff did not have medical expenses in excess of $1,000 and conceded that she could not sue for pain and suffering. She nevertheless contended "that N.J.S.A. 59:9-2(d) does not bar recovery for damages for permanent injuries i.e., the impairment of her faculties, health and ability to participate in activities as distinguished from physical discomfort and distress." In LaBarrie, Judge Bilder, then sitting in the Law Division, distinguished Peterson where there was "objective impairment," and stated
[t]o extend Peterson so as to permit recovery for this type of non objective complaint would be to ignore the Legislative mandate. The result would be to allow recovery for pain and suffering by denominating it permanent injury.
The Legislature did not intend such a result. The intention of the Legislature is entitled to greater recognition and implementation. Id.

*531 We believe that Judge Bilder's analysis is equally applicable in these circumstances and affirm the dismissal of the personal injury claims.
We note our agreement with plaintiff that N.J.S.A. 59:9-2(d) does not bar all claims. As made so very clear by the Attorney General's Task Force Report, the Tort Claim Act promotes reimbursement for "full net economic loss," Report at 16, quoted in full in Margolis and Novack, supra, at R-8. However, plaintiffs do not press a claim before us for medical expense reimbursement, undoubtedly because the Act "prohibits awards ... for damages compensated through collateral sources such as insurance policies," Id. at R-9,[3] and they could not identify any economic loss on the motion for summary judgment. Their argument to the motion judge that there "may be other things that we've discovered through ongoing discovery" cannot suffice to preclude summary judgment.
Finally, we agree with plaintiffs' contention that they may pursue their punitive damage claim against the public employees, although not against the entity. See N.J.S.A. 59:9-2(c). See also Chatman v. Hall, supra. And this is so, notwithstanding the fact that no compensatory damages may be recoverable. Marion v. Borough of Manasquan, supra, 231 N.J. Super. at 333, 555 A.2d 699.
We accordingly reverse the judgment insofar as it dismisses the claim for punitive damages against the individual defendants and otherwise affirm the judgment under review.
NOTES
[1] Plaintiffs also contend that it is for the jury to decide if Jay Thorpe suffered a "permanent loss of a bodily function" and satisfied the threshold.
[2] We recognize that a majority of our Supreme Court has recently distinguished between public entities and public employees under the Tort Claims Act, noting that "[a] public entity is deemed `not liable for an injury' except as provided in the Act, N.J.S.A. 59:2-1. In contrast, a public employee `is liable for injury' except as otherwise provided. N.J.S.A. 59:3-1." See Chatman v. Hall, 128 N.J. 394 at 402, 608 A.2d 263 (1992). Independent of the fact that the Court there "emphasized that the differential treatment of public employee and entity liability by the Tort Claims Act in [that] case [was] limited to dangerous conditions on public property," 128 N.J. at 417, 608 A.2d 263, the immunity embodied in N.J.S.A. 59:9-2(d) expressly relates to both "a public entity or public employee." Moreover, in Weiss v. New Jersey Transit 128 N.J. 376, 608 A.2d 254 (1992), decided the same day as Chatman, a majority of the Court made clear that "the liability provisions of the Act will not take precedence over specifically granted immunities" and that "[w]e have been adjured by the framers of the Tort Claims Act that we should approach these case from the perspective that immunity is the dominant theme of the Act," relying on the Task Force Comment to N.J.S.A. 59:2-1. 128 N.J. at 380, 383, 608 A.2d 254.
[3] The record reflects that Dr. Ahmed received an "insurance check" for $295.