749 A.2d 868 (2000)
330 N.J. Super. 320
Victor N. ROCCO and Sandra Rocco, Plaintiffs-Appellants,
v.
NEW JERSEY TRANSIT RAIL OPERATIONS, INC.; Bombardier, Inc.; Faiveley (Canada) Inc., and its successor in interest; EFE Transport, Inc., as successor in interest to Faiveley (Canada) Inc., and in its own right and Westinghouse Air Brake Co., Inc., as successor in interest to EFE Transport, Inc., and Faiveley (Canada) Inc., and in its own right, Defendants-Respondents.
New Jersey Transit Rail Operations, Inc., Defendant/Third Party Plaintiff-Respondent,
v.
Bombardier, Inc., Third Party Defendant/Fourth Party Plaintiff-Respondent,
v.
Faiveley (Canada) Inc., and its successor in interest; EFE Transport, Inc., as successor in interest to Faiveley (Canada) Inc., and in its own right, and Westinghouse Air Brake Co., Inc., as successor in interest to EFE Transport, Inc., and Faiveley (Canada) Inc., and in its own right, Fourth Party Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 2000.
Decided April 25, 2000.
*871 John W. Trimble, Sr., Turnersville, for appellant.
Valerie Egar, Deputy Attorney General, for respondent New Jersey Transit Rail Operations, Inc. (John J. Farmer, Jr., Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Egar, on the brief).
Alan Greenberg, Marlton, for respondent Bombardier, Inc. (Rawle & Henderson, attorneys; Mr. Greenberg on the brief).
Tricia E. Habert, for respondents Faiveley (Canada) Inc., EFE Transport, Inc., and Westinghouse Air Brakes Company, Inc. (Crawshaw, Mayfield, Turner, O'Mara, Donnelly & McBride, Cherry Hill, attorneys; Francis X. Donnelly, Haddon Heights, on the brief).
Before Judges CARCHMAN, LEFELT and LINTNER. *869
*870 The opinion of the court was delivered by LINTNER, J.S.C. (temporarily assigned).
This appeal requires us to determine several issues, including whether the doctrine of res ipsa loquitur can be used in a personal injury claim against a public entity based upon the existence of an alleged dangerous condition of public property. We hold that the doctrine does not apply to such claims. This case has a complex procedural history climaxing in an order denying plaintiffs' requested adjournment to obtain an expert witness and multiple orders entering summary judgment in favor of all defendants dismissing plaintiffs' complaint in its entirety. We reverse the summary judgment order dismissing plaintiffs' complaint for economic loss damages in favor of New Jersey Transit Railroad Operations, Inc. (NJT). We affirm the entry of the remaining summary judgment orders of dismissal in favor of defendants and remand the matter for trial on plaintiffs' claim for economic loss and NJT's *872 third party actions against both manufacturer defendants.
On September 6, 1994, plaintiffs, Victor and Sandra Rocco, filed a complaint against NJT for personal injuries sustained by Victor Rocco. The complaint alleged that NJT negligently maintained and inspected its train and was vicariously responsible for the negligent actions of its conductor. The complaint included a count against a fictitious manufacturer for negligent design and construction of the emergency unlock mechanism utilized on the exterior doors of NJT's railroad cars. After answering, NJT filed a third party complaint against Bombardier, Inc. (Bombardier), the manufacturer of the railroad car, alleging negligence, defective manufacture and design, breach of warranty and breach of contract, seeking contribution and indemnification.
Plaintiffs amended their complaint naming Bombardier as a defendant. Thereafter, with leave of court, Bombardier filed a fourth party complaint against Faiveley Inc. (Faiveley) and its successors in interest, the manufacturer of the emergency unlock mechanism, seeking contribution and indemnification based upon negligent manufacture and design, breach of warranty and design defect. Plaintiffs filed a second amended complaint naming Faiveley as a direct defendant.
On December 17, 1997, NJT moved for summary judgment. Bombardier and Faiveley followed, filing cross motions for summary judgment. In a letter brief filed in opposition to the motions for summary judgment, plaintiffs' counsel advised the motion judge that, on the return date of the motion, he would argue that plaintiffs were entitled to a res ipsa loquitur charge prior to the taking of any testimony. The motions were returnable January 23, 1998, and the trial scheduled to start on January 26, 1998. On the return date, the motion judge denied plaintiffs' request for a res ipsa loquitur charge prior to the taking of testimony, indicating that counsel could renew the request at the close of plaintiffs' case. While denying NJT's motion for summary judgment based upon design immunity, the judge reserved on NJT's alternative theories for summary judgment, as well as Bombardier's and Faiveley's motions for summary judgment. The trial was adjourned, and the judge issued a letter opinion on February 3, 1998, granting NJT's remaining motions for summary judgment and reserving on the motions filed by Bombardier and Faiveley.
On February 6, 1998, the parties held a telephone conference with the Presiding Judge, who, based upon the age of the case, denied plaintiffs' request for an adjournment in order to obtain the services of an expert witness on the products liability claim against the manufacturer defendants. On February 23, 1998, the parties appeared for trial and the motion judge granted the manufacturer defendants' motions for summary judgment, dismissing all remaining aspects of the complaint. Plaintiffs' subsequent motions for reconsideration and to supplement the record were denied.
Plaintiffs appeal from the order granting summary judgment to defendants and dismissing their complaint. Additionally, plaintiffs appeal the denial of their motion to proceed, based upon res ipsa loquitur, as well as the Presiding Judge's refusal to grant plaintiffs' subsequent request for adjournment of the trial to acquire an expert witness.
In reaching the conclusion that NJT was entitled to summary judgment, the motion judge found: (1) plaintiffs' proofs were insufficient to establish that there existed a dangerous condition of public property as required by N.J.S.A. 59:4-2; and (2) plaintiff Victor Rocco was unable to show that he sustained a substantial permanent loss of bodily function as required by N.J.S.A. 59:9-2(d), to support his claim for pain and suffering. The dismissal of plaintiffs' complaint against the manufacturer defendants, Bombardier and Faiveley, was based upon the motion judge's conclusion *873 that summary judgment was appropriate, given plaintiffs' failure to retain an expert witness on the issue of defective design.
In October 1992, plaintiff boarded an NJT train in Atlantic City intending to disembark at the Lindenwold station to catch the high-speed line to Philadelphia. Upon stopping at Lindenwold, the conductor, Philip Ciaravino, opened the door with his key and stepped out onto the platform along with approximately six passengers. The conductor left his key in the door. Suddenly the door closed. Panic ensued. A number of passengers who had intended to disembark began to scream, as a result of being trapped on the train. The conductor told them to calm down and inquired whether or not there was anybody in the train who could get to the access panel to open the door.
Plaintiff went to the access panel and pulled the handle as directed by the conductor. The door opened about an inch and stopped. One of the other passengers, in an attempt to get off the train, pressed against the door pushing it open the rest of the way and ran off the train. As a result, the sliding door jammed plaintiff's hand against the unlock mechanism handle.
Plaintiff sustained a laceration of the right thumb. The thumb was sutured, and he was placed in a short arm cast. He also complained of pain in the area of his right shoulder, as well as his middle and lower back. In the summer of 1992, xrays showed a healed fracture over the "tubercle of the scaphoid." Dr. John Bannon, plaintiff's treating orthopedic surgeon, recommended that plaintiff go to the Hand Center at Jefferson Hospital. Plaintiff did not follow Bannon's recommendation but instead sought treatment from Dr. Robert Carabelli at the Back Rehab Institute for pain management. Plaintiff was also seen by a psychologist, Dr. John McGowan, at the Institute. McGowan diagnosed "chronic pain syndrome with significant personal, interpersonal and vocational impairments and evidence of some anxious and depressive symptomology."
Plaintiff, who was fifty-one years old at the time of the accident, claims that, as a result of the injuries sustained, he suffers from pain, depression and the need to take medication, forcing him to take early retirement. Plaintiff's psychiatrist, Dr. Norman Chazin, diagnosed "Mood Disorder Secondary to Medical Condition and probable Post Traumatic Stress Disorder." Dr. John Rushton, a neuro-psychiatrist retained by Bombardier, examined plaintiff and found that he was severely depressed and totally disabled as a result of his injury. Dr. Ian Blair Fries, the orthopedic surgeon hired by NJT, indicated that the only orthopedic residual was a small scar on the right thumb and that his "remaining residuals are entirely in the psychologic arena." NJT also retained a forensic psychiatrist, Dr. Kenneth Weiss, who described plaintiff's depression as treatable and found that plaintiff had resisted taking the antidepressant medication that would have helped him.
The railroad car, known as a Comet IIB, was manufactured for NJT by Bombardier. After contracting for the supply of twenty cars, Bombardier submitted a request to change the supplier of the door operating mechanism, including the emergency unlock mechanism. NJT approved the change, and equipment manufactured and supplied by Faiveley was substituted for equipment previously manufactured and supplied by a company known as "Vapor."
NJT's expert on train design, Norman S. Marcus, P.E., rendered a report indicating that the unlock mechanism supplied by Faiveley did not conform to the specifications of the original supplier. He reported that the Faiveley mechanism "uniquely allowed Mr. Rocco to be able to place his thumb and fingers in proximity to the closing door panel while he was operating the emergency release lever, such that the door could reach his hand before he would have had sufficient time to remove it from *874 the lever." He added that the NJT specification would have "precluded the ability for this to have occurred had Bombardier followed that specification explicitly."
NJT's conductor, who was not named as a defendant, testified at depositions that, when he was being trained in the operation of the Comet IIB emergency unlock mechanism, he learned there was a danger of his hand being jammed if someone else opened the door at the time he operated the handle. He described the mechanism and door-opening procedure as being a one-person operation. According to David Carter, NJT's director of Capital Projects, Locomotive Equipment Department, conductors were supposed to have a key that opened the train doors from the outside on them at all times.

I
Plaintiffs contend that medical reports concerning Victor Rocco's psychiatric and orthopedic injuries were sufficient to present a prima facie case to meet the threshold required by the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 to present a claim for pain and suffering. We disagree. In Brooks v. Odom, 150 N.J. 395, 696 A.2d 619 (1997), the plaintiff suffered from posttraumatic headaches and soft tissue injury to the neck and back. The treating doctor concluded that plaintiff, who suffered from chronic pain, had sustained a significant and permanent loss of function with an overall poor prognosis. Id. at 400, 696 A.2d 619. In holding that the proofs presented were not sufficient to meet the threshold required by N.J.S.A. 59:9-2(d), for an award of pain and suffering damages, the Supreme Court held that a plaintiff must sustain a permanent loss of the use of a bodily function that is "substantial." Id. at 406, 696 A.2d 619.
In Collins v. Union County Jail, 150 N.J. 407, 696 A.2d 625 (1997), the plaintiff, an inmate in the Union County Jail, was fondled by a corrections officer and thereafter fondled and forcibly sodomized on a second occasion. Id. at 410, 696 A.2d 625. The inmate brought suit alleging that, as a result of the sexual assault, he sustained a permanent post-traumatic stress disorder as diagnosed by his treating psychologist. Ibid. The Supreme Court distinguished other cases involving psychological injuries where there had been no physical injury claimed,[1] finding the missing link to be the "aggravating and intrusive assault" that allegedly caused the plaintiff to sustain permanent psychological injuries. Id. at 420, 696 A.2d 625. Soft tissue injuries claimed to be permanent do not generally constitute sufficient aggravation to warrant recovery for pain and suffering. Id. at 418, 696 A.2d 625; Thorpe v. Cohen, 258 N.J.Super. 523, 526-27, 610 A.2d 878 (App.Div.1992).
In Hammer v. Township of Livingston, 318 N.J.Super. 298, 723 A.2d 988 (App.Div. 1999), we dealt with similar facts concerning psychological injuries. The plaintiff, Susan Hammer, a pedestrian, was struck by a fire chief station wagon operated by the Chief of the Livingston Fire Department. Id. at 301, 723 A.2d 988. She suffered multiple fractures to the left side of her body and several lacerations requiring immediate surgical repair. Ibid. She had residual scarring, including a thin diagonal scar on her right lower lip, a vertical scar extending from the corner of her right eye to her nose, a fifteen-centimeter scar on her left knee cap, an inverted "v" shaped scar on her elbow and two scars on her abdomen. Id. at 303, 723 A.2d 988. At depositions she complained of pain on the right side, that she could no longer walk with or lift her grandchildren, and could no longer have sexual relations with her husband. Id. at 302, 723 A.2d 988.
*875 Hammer was examined by a psychiatrist who diagnosed that she was suffering from post-traumatic stress disorder with severe phobic elements. Ibid. The psychiatrist reported that, although the condition had moderated, it appeared to be chronic and partially disabling. Ibid. He described her post-traumatic stress disorder as characterized by elements of anxiety and depression which had fallen into a mild range but for which full resolution had not been achieved. Id. at 302-303, 723 A.2d 988. He prognosticated that she would remain less than fully recovered and that her partial disability appeared to be permanent. Id. at 303, 723 A.2d 988.
While concluding that the plaintiff's scars constituted substantial disfigurement under the statute, we determined that her post-traumatic stress disorder and debilitating psychological condition did not constitute a substantial permanent loss of bodily function. Id. at 306, 723 A.2d 988. We found it unnecessary to determine whether the circumstances were sufficiently aggravating to sustain a permanent psychological injury so as to qualify as a permanent loss of bodily function, because plaintiff's own doctor characterized her permanent psychological injury to be a mild level of anxiety and depression. Id. at 307, 723 A.2d 988.
Here, as in Hammer, supra, a reading of plaintiff's psychiatrist's report fails to disclose an opinion that plaintiff is suffering from a substantial permanent psychological injury. Nor do plaintiff's orthopedic injuries qualify as a substantial permanent loss of function. Plaintiff's thumb has healed, except for a scar which is not claimed to be a substantial disfigurement. Furthermore, plaintiff's orthopedic injuries are confined to subjective complaints of pain and, therefore, do not meet the objective medical evidence criteria necessary for a finding of permanent loss of bodily function. Id. at 306, 723 A.2d 988. Likewise, we cannot conclude that the circumstances giving rise to plaintiff's psychological injuries are sufficiently aggravating to meet the Collins threshold.
While the record before us fails to establish sufficient facts upon which to base a threshold claim for pain and suffering, the same does not hold true regarding plaintiff's claim for economic loss. Plaintiff obtained an economic report dated November 20, 1996, from Robert P. Wolf, who concluded that plaintiff sustained an economic loss of $502,602 resulting from his early retirement. N.J.S.A. 59:9-2(d), which limits damages recoverable for pain and suffering, does not prevent plaintiff from seeking reimbursement for full net economic loss. Thorpe, supra, 258 N.J.Super. at 531, 610 A.2d 878.
NJT contests the validity of Wolf's conclusions based upon the fact that plaintiff's retirement, which took place two years after the accident, represented thirty years of service with the Philadelphia School Board. However, the issue raised by NJT is one of credibility and, properly, a function of the trier of fact. Reisman v. Great Am. Recreation, Inc., 266 N.J.Super. 87, 101, 628 A.2d 801 (App.Div.), certif. denied, 134 N.J. 560, 636 A.2d 519 (1993). NJT's argument that plaintiff waived his right to seek economic loss damages, because it was not argued at the hearing on the motion for summary judgment, is also without merit. The grant of summary judgment on the issue of damages was limited to the issue of pain and suffering. It is incumbent on the moving party to eliminate all issues of material fact on a motion for summary judgment. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Plaintiff's economic claim was set forth in the complaint and discovery should have revealed that plaintiffs had retained an expert who rendered an opinion concerning economic loss. R. 4:10-2(d).

II
Having determined that plaintiffs assert a viable damage claim limited to economic *876 loss, we now consider whether NJT is entitled to immunity under the Tort Claims Act, given the facts of the accident and the allegations raised. Plaintiffs contend that the facts are sufficient to establish an issue of liability based upon the existence of a dangerous condition of public property and respondeat superior. N.J.S.A. 59:2-2 which deals with liability for the acts of a public employee provides:
a. A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.
b. A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.

[N.J.S.A. 59:2-2.]
The definition provisions of N.J.S.A. 59:4-1 set forth the following:
As used in this chapter:
a. "Dangerous condition" means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.
b. "Protect against" includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition.
c. "Public property" means real or personal property owned or controlled by the public entity, but does not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity.

[N.J.S.A. 59:4-1.]
The liability provisions of N.J.S.A. 59:4-2 state:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. A public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[N.J.S.A. 59:4-2.]
NJT argues that, absent proof of a broken or poorly maintained door release, a dangerous condition cannot exist because the emergency unlock mechanism functioned exactly as it was designed, to release the train door so it could be manually opened.
NJT's argument is flawed. NJT's primary focus on its motion for summary judgment was that it was entitled to design immunity as a matter of law in accordance with N.J.S.A. 59:4-6, which provides:
a. Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where *877 such plan or design is prepared in conformity with standards previously so approved.

[N.J.S.A. 59:4-6.]
NJT correctly pointed out that if it was entitled to design immunity, plaintiff could not prevail on the theory of dangerous condition of public property. Once design immunity attaches, it cannot be lost if later knowledge shows a design or plan to be dangerous. Thompson v. Newark Hous. Auth., 108 N.J. 525, 532, 531 A.2d 734 (1987). However, in order to prevail on design immunity, the burden is on the public entity to show that the design, which is alleged to constitute a dangerous condition, was itself the subject of prior approval. N.J.S.A. 59:4-6. The motion judge properly found that, because NJT's own expert concluded that the emergency unlock mechanism did not conform with the original specification, NJT was not entitled to summary judgment on the basis of design immunity. See Ellison v. Hous. Auth. of South Amboy, 162 N.J.Super. 347, 351, 392 A.2d 1229 (App.Div.1978).
Where a public entity is unable to perfect design immunity as a result of failure to establish proper approvals, liability may attach if there is sufficient evidence to show that the design defect represents a dangerous condition as prescribed by N.J.S.A. 59:4-2. Weiss v. New Jersey Transit, 128 N.J. 376, 384, 608 A.2d 254 (1992). Hence, NJT's liability for a dangerous condition of public property is not limited to circumstances where the dangerous condition is the result of failure on the part of a public entity to maintain or fix broken equipment.
Applying these principles to the record before us, we are convinced that the motion judge improperly concluded that there was insufficient evidence to establish that the emergency unlock mechanism constituted a dangerous condition of public property. The motion judge found that plaintiff's injuries were the result of the manner in which the emergency unlock mechanism was used, not due to a defect in the mechanism itself. In granting summary judgment, the judge misapplied the holding in Levin v. County of Salem, 133 N.J. 35, 626 A.2d 1091 (1993), by concluding that the evidence before him was limited to showing a foreseeable risk of injury instead of a dangerous condition of the property itself.
Plaintiff, as a patron of NJT, occupied the status of an invitee. Luciano v. Port Auth. Trans-Hudson Corp., 306 N.J.Super. 310, 313, 703 A.2d 690 (App. Div.1997). As such, NJT had a nondelegable duty, subject to the palpably unreasonable standard set forth in N.J.S.A. 59:4-2, to make the premises safe or warn of the dangerous condition. Ridenour v. Bat Em Out, 309 N.J.Super. 634, 644, 707 A.2d 1093 (App.Div.1998). The conductor's knowledge of both the danger involved and the type of injury that could ensue was sufficient, given the duty imposed, to establish a prima facie case of liability pursuant to N.J.S.A. 59:4-2. The dangerous condition was inherent in the design of the mechanism, which exposed plaintiff's hand to injury, thus satisfying the requirement set forth in Levin, supra, 133 N.J. at 35, 626 A.2d 1091.
We cannot ascertain from the record the basis for the motion judge's entry of summary judgment dismissing plaintiffs' claim based upon vicarious liability. The absence of a record correlating facts and conclusions of law prevent us from entertaining a meaningful review. Nevertheless, the facts before us are sufficient to establish the existence of an issue of fact justifying plaintiffs' claim based upon respondeat superior. N.J.S.A. 59:2-2 provides that a public entity is liable for injuries caused by acts or omissions of a public employee acting within the scope of employment to the same extent as a private individual. Where the vicarious liability arises out of a dangerous condition of public property, the palpably unreasonable standard set forth in N.J.S.A. 59:4-2 is *878 used to determine liability for employees' acts. Pico v. State, 116 N.J. 55, 63, 560 A.2d 1193 (1989). The conductor's failure to have the door key on his person when he exited the train, together with his failure to warn the other passengers not to push the door open as plaintiff operated the emergency handle, is sufficient to create a jury question concerning palpably unreasonable conduct and vicarious liability.

III
Our next area of inquiry deals with the motion judge's refusal to charge res ipsa loquitur before the presentation of testimony. Although couched in terms of res ipsa loquitur, plaintiffs' counsel essentially urged at oral argument that they were entitled to an Anderson v. Somberg charge. 67 N.J. 291, 338 A.2d 1, cert. denied, 423 U.S. 929, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975). We disagree and hold, in the context of this case, that plaintiffs are not entitled to the benefit of either a res ipsa loquitur or Anderson v. Somberg charge.
Res ipsa loquitur is an evidentiary rule governing the adequacy of evidence in some negligence cases, not a theory of liability. Brown v. Racquet Club of Bricktown, 95 N.J. 280, 288, 471 A.2d 25 (1984). Under normal circumstances, negligence is not presumed but must be proven by a plaintiff. Buckelew v. Grossbard, 87 N.J. 512, 525, 435 A.2d 1150 (1981); Meny v. Carlson, 6 N.J. 82, 91, 77 A.2d 245 (1950). The doctrine is essentially a circumstantial way of proving negligence by permitting an inference that the defendant has used less than due care. Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269, 139 A.2d 404 (1958). The inference of negligence in turn establishes a prima facie case at the close of a plaintiff's evidence. Buckelew, supra, 87 N.J. at 526, 435 A.2d 1150; see also Vespe v. DiMarco, 43 N.J. 430, 436-37, 204 A.2d 874 (1964). Thus, the motion judge's denial, which was without prejudice to a renewal of plaintiffs' request at the close of plaintiffs' case, was appropriate.
The fact that the timing of a request to apply the doctrine of res ipsa loquitur should usually await the end of plaintiff's case does not end our inquiry. The more significant, threshold issue is whether plaintiffs can proceed on the theory of res ipsa loquitur in an action against a public entity based upon an alleged dangerous condition of public property. While there are no reported decisions in New Jersey, the California Supreme Court in Brown v. Poway Unified School Dist., 4 Cal.4th 820, 15 Cal.Rptr.2d 679, 843 P.2d 624 (1993), has considered the issue and determined that the res ipsa loquitur inference cannot, by itself, be used to establish a prima facie case of liability against a public entity arising out of a dangerous condition of public property. The California Tort Claims Act serves as the model for the New Jersey Act. As such, we look to the California courts for guidance when interpreting our act. Levin, supra, 133 N.J. at 46, 626 A.2d 1091. The California court determined that res ipsa loquitur was not available to establish a prima facie case because its Act, like ours, mandates proof that a public employee created the dangerous condition in order to establish liability. Brown, supra at 635-36.
Likewise, in order to establish liability, our statute requires proof that there is either constructive or actual knowledge of the dangerous condition on the part of the public entity, N.J.S.A. 59:4-2(b), or that it was created by a public employee in the scope of employment, N.J.S.A. 59:4-2(a). Our statute further provides that liability shall not attach, unless the action taken by the public entity to protect against the condition was not palpably unreasonable. By contrast, res ipsa loquitur is available if it is more probable than not that the defendant was negligent. Like the California Act, our Tort Claims Act requires proofs that go beyond those necessary to permit a res ipsa loquitur inference. *879 Therefore, we conclude that res ipsa loquitur is not normally available in an action against a public entity grounded upon a dangerous condition of public property.[2]
We next address plaintiffs' contention that they need only prove the happening of the accident in order to shift the burden of proof to defendants. Res ipsa loquitur does not shift the burden of proof or the burden of persuasion. It merely confers on plaintiff an inference of negligence necessary to establish a prima facie case, thereby requiring defendant to go forward and explain the causative circumstances because of defendant's superior knowledge. It does not require defendant to present exculpatory evidence. Kahalili v. Rosecliff Realty, Inc., 26 N.J. 595, 606, 141 A.2d 301 (1958).
By contrast, the doctrine recognized in Anderson, supra, 67 N.J. at 291, 338 A.2d 1, does shift the burden of proof to defendants, requiring them to exonerate themselves from liability. Estate of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 462-63, 734 A.2d 778 (1999). The doctrine is one of "alternate liability," which is limited to medical malpractice cases in which plaintiff is "clearly helpless or anesthetized," the injury bespeaks negligence, and all potential defendants in the chain of events causing plaintiff's injuries are before the court and represented. Id. at 464-65, 734 A.2d 778. The circumstances in this case simply do not qualify.

IV
We next address the questions raised by plaintiffs concerning the need for expert testimony to prosecute their products liability claim against the manufacturer defendants and the Presiding Judge's refusal to grant an adjournment to permit plaintiffs to retain such an expert. Plaintiffs first contend that the motion judge improperly granted summary judgment dismissing plaintiffs' direct complaint against the manufacturer defendants for failure to have an expert witness regarding defective design. Plaintiffs do not argue that the design defect in question was a self-evident defect for which expert testimony would not be required. Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 170-71, 406 A.2d 140 (1979).
Generally, the fact-finder is required to perform a risk-utility analysis in order to determine whether a product is defective in its design. In performing a risk-utility analysis, an expert opinion is ordinarily relied upon to establish a reasonable alternative design. Green v. General Motors Corp., 310 N.J.Super. 507, 517-18, 709 A.2d 205 (App.Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998); Smith v. Keller Ladder Co., 275 N.J.Super. 280, 286, 645 A.2d 1269 (App.Div. 1994). Expert testimony is required when the subject matter to be dealt with "is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." Butler v. Acme Markets, Inc., 89 N.J. 270, 283, 445 A.2d 1141 (1982). Where the case involves a complex instrumentality, expert testimony is needed in order to help the fact-finder understand "the mechanical intricacies of the instrumentality" and help to exclude other possible causes of the accident. Jimenez v. GNOC, Corp., 286 N.J.Super. 533, 546, 670 A.2d 24 (App.Div.), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996).
In Sparrow v. La Cachet, Inc., 305 N.J.Super. 301, 702 A.2d 503 (App.Div. 1997), we affirmed the trial court's dismissal of plaintiff's products liability claim against a manufacturer for failure to have an expert witness where a facial machine emitted scalding water and steam, burning plaintiff's face and neck. The emergency *880 unlock mechanism under consideration likewise involved mechanical intricacies and design criteria which necessarily require expert testimony in order to prove the existence of a defective design.
Plaintiffs next maintain that, because Bombardier did not follow the specifications previously approved by NJT, they should be permitted to use the deposition testimony of NJT's expert, Norman Marcus, to show the product was defective and created a dangerous condition. They further assert that Marcus's deposition testimony embraced facts and not opinions. We disagree with both contentions.
At the summary judgment hearing, NJT's counsel made it clear that, in the event NJT's motion for summary judgment was denied, the client was prepared, based upon Marcus's opinions, to prove both a breach of contract and products liability claim against the manufacturer defendants. The failure to follow approved specifications does not, standing alone, constitute a defect in design. Thus, Marcus's testimony concerning Bombardier's failure to follow NJT's original specifications does not further plaintiffs' products claim against the manufacturer defendants. Marcus's conclusion that Bombardier's deviation from the original design specifications created a risk of injury, which would have been precluded had the original specifications been followed, is in the form of an opinion. It embraces the unsafe nature of the design, as well as the fact that NJT's specifications were not followed. Plaintiff's assertion that Marcus's findings are factual is without merit.
The opinion of an expert, as opposed to testimony of facts perceived, may not ordinarily be compelled against the expert's wishes. Stanton v. Rushmore, 112 N.J.L. 115, 117-18, 169 A. 721 (E. & A.1934); Braverman v. Braverman, 21 N.J.Super. 367, 368, 91 A.2d 226 (Ch. Div.1952). Ordinarily, a trial court should not permit the use by a party of another party's videotape deposition of an expert witness. Genovese v. New Jersey Transit Rail Operations, Inc., 234 N.J.Super. 375, 381, 560 A.2d 1272 (App.Div.), certif. denied, 118 N.J. 195, 570 A.2d 960 (1989). Our Supreme Court has held that, absent exceptional circumstances, as defined by R. 4:10-2(d)(3), courts should not allow a party to use the opinion testimony of an expert originally consulted by an adversary. Graham v. Gielchinsky, 126 N.J. 361, 373, 599 A.2d 149 (1991).
In Moore v. Kantha, 312 N.J.Super. 365, 711 A.2d 967 (App.Div.1998), we held that, absent unusual circumstances, a party should not be permitted to offer proofs in the form of opinions rendered by an adversary's expert in depositions. Moore involved a malpractice case in which the plaintiff contended that the defendant doctor mailed the plaintiff a prescription for medication to be used in treatment of postherpetic neuralgia without adequate instruction or supervision. Id. at 370, 711 A.2d 967. We found unusual circumstances existed, because the defendant's expert was the leading proponent of the rare treatment and the only physician to study its effects and actually render treatment involving the medication in question. Id. at 377, 711 A.2d 967. In permitting the plaintiff to use defendant's expert deposition, we pointed out that the expert "was not one of the `cottage industry' experts..." but "the only other expert who had actually utilized the treatment." Ibid. Plaintiffs have failed to present any unusual or exceptional circumstances that would justify their use of NJT's expert's deposition testimony.
Finally, we conclude, from a review of the record, that the Presiding Judge did not abuse his discretion in denying plaintiffs' request for an adjournment to retain an expert. Ordinarily, we do not interfere with a motion judge's denial of a request for an adjournment unless it appears that an injustice has been done. Nadel v. Bergamo, 160 N.J.Super. 213, 218, 389 A.2d 500 (App.Div.1978).
As the Presiding Judge pointed out, plaintiff never made any effort to obtain *881 an expert even though the complaint, which was more than three years old, specifically alleged liability as a result of defective design. Plaintiffs' present contention that the case is one of breach of contract, not product liability, is without merit. Not only was the original complaint framed in terms of design defect, but plaintiff is without standing to pursue a direct action against Bombardier on the theory of breach of contract. F. Bender, Inc. v. Jos. L. Muscarelle, Inc., 304 N.J.Super. 282, 284, 700 A.2d 374 (App. Div.1997). The contract was between NJT and Bombardier. Moreover, there has never been a showing by plaintiffs' counsel that he has attempted to obtain an expert nor that for some reason, other than his own choice, has been prevented from obtaining one. Under these circumstances, there was no abuse of discretion on the part of the Presiding Judge.
We add that our affirmance of the dismissal of plaintiffs' direct product liability claims against Bombardier and Faiveley does not affect the viability of the claims asserted by plaintiffs against NJT. Plaintiffs' status as an invitee prevents NJT from delegating its liability for a dangerous condition arising from a defective design to the third or fourth party defendants. Therefore, should NJT prevail on its third-party actions for contribution or indemnification, the dismissal of plaintiffs' direct action against the manufacturer defendants will not reduce plaintiff's recovery, if any. NJT's third-party claims against Bombardier and Faiveley, as well as Bombardier's fourth-party claims against Faiveley, remain.
Accordingly, we reverse the order dismissing plaintiffs' complaint against NJT and remand the matter, together with the third and fourth party causes of action, for trial consistent with this opinion. In all other respects the orders of the motion judge and Presiding Judge are affirmed.
NOTES
[1] Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287 (1987); Srebnik v. State, 245 N.J.Super. 344, 585 A.2d 950 (App.Div. 1991).
[2] See Myrlak v. Port Auth. of N.Y. and N.J., 157 N.J. 84, 723 A.2d 45 (1999), in which the Supreme Court held that res ipsa loquitur is not available in a products liability case, where plaintiff must show that the product was defective at the time it left the manufacturer.