**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1765-15T1

LEE GOLDBERG,

    Plaintiff-Appellant,

v.

BMW OF NORTH AMERICA, LLC,

    Defendant-Respondent.

_____

        Argued May 23, 2017 — Decided July 3, 2017

        Before Judges Yannotti and Gilson.

        On appeal from the Superior Court of New
        Jersey, Law Division, Bergen County, Docket
        No. L-9481-14.

        Lee Goldberg, appellant, argued the cause pro
        se.

        Michelle Molinaro Burke argued the cause for
        respondent (Porzio, Bromberg & Newman, P.C.,
        attorneys; Roy Alan Cohen and Ms. Burke, on
        the brief).

PER CURIAM

    In this product liability action, plaintiff Lee Goldberg

alleges he suffered injuries as a result of a design defect and a

failure to warn when he burned his calf on the tailpipe of his

2014 BMW X3 sports utility vehicle (2014 BMW X3). He appeals from a November 20, 2015 order granting summary judgment to defendant BMW of North America, LLC (BMW) and dismissing with prejudice his complaint.

We reverse the dismissal of plaintiff's design defect claim because BMW failed to establish on summary judgment that the tailpipe was an instrumentality with complex components and that plaintiff needed an expert to proceed. We affirm the dismissal of plaintiff's failure to warn claim because BMW had provided a warning in the owner's manual and plaintiff failed to present evidence that the warning was inadequate.

I.

We take the facts from the summary judgment record, viewing them in the light most favorable to plaintiff, the non-moving party. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016); R. 4:46-2(c).

In April 2014, plaintiff leased a 2014 BMW X3. The following month, he burned his calf on the vehicle's tailpipe as he was removing a folding chair from the rear hatchback cargo area. Plaintiff contends that the tailpipe of the 2014 BMW X3 unnecessarily extended beyond the rear bumper. Plaintiff also asserts that the extended tailpipe is dangerous because, after the vehicle is driven, the tailpipe is hot and people who walk behind

the vehicle or use the rear hatchback can come into contact with the hot tailpipe and suffer injuries.

After plaintiff was injured, he contacted BMW to report the incident. BMW sent a representative who inspected plaintiff's 2014 BMW X3, and that representative informed plaintiff that the tailpipe was consistent with the vehicle's specifications. Thus, BMW took the position that there was nothing wrong with or defective about the 2014 BMW X3.

In October 2014, plaintiff filed a complaint against BMW. After some initial proceedings, plaintiff agreed to pursue claims under the New Jersey Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11. Specifically, plaintiff asserted claims of a design defect, a failure to warn, and a manufacturing defect.

In answers to interrogatories, plaintiff produced a series of photographs. Some of the photographs depicted the rear of his 2014 BMW X3 and showed that the tailpipe extended beyond the rear bumper. Those pictures also showed that the tailpipe could come into contact with the leg of a person who was walking or standing behind the 2014 BMW X3. Other photographs depicted a 2007 model of the BMW X3, which showed that the tailpipe in that earlier model did not extend beyond the rear bumper. Thus, in that earlier model, a person walking or standing behind the vehicle would not come into contact with the tailpipe. In his interrogatory answers,

plaintiff contended that those photographs showed that there was a safer alternative design of the tailpipe.

During discovery, BMW produced documents showing that before 2014, it had received a number of complaints from owners of BMW X3s who had been burned by the tailpipe. Plaintiff also discovered and produced documents showing that in 2008, the United States Department of Transportation had ordered BMW to conduct a recall of the BMW Mini Cooper S vehicles because the exhaust pipes in those vehicles extended beyond the rear bumper and a number of customers had been burned when they accessed the rear cargo area of the vehicle after the vehicle had been driven.

While discovery was still being conducted, plaintiff moved for partial summary judgment contending that the photographs established a design defect in the 2014 BMW X3. BMW opposed that motion. After hearing oral argument, the motion court denied the motion reasoning that the photographs did not allow the court to find as an undisputed fact that an alternative safer design existed for the 2014 BMW X3. The motion court also reasoned that

> a jury could consider the photographs in an overall assessment of whether a more reasonable alternative was available and should or could have been incorporated into [plaintiff's] vehicle; however, the [c]ourt cannot make that determination as a matter of law . . . In this case, a jury must consider the utility of the product as designed, and

whether the alternative design would adversely affect that utility.

Following the close of discovery, BMW moved for summary judgment. BMW argued that plaintiff had not retained an expert and plaintiff needed an expert to establish a design defect. Without submitting any certifications or affidavits, BMW contended that the design of a vehicle's exhaust system was an instrumentality with complicated components and a jury needed expert testimony to determine whether there was a safer alternative design where the tailpipe did not extend beyond the bumper. BMW also submitted the owner's manual of the 2014 BMW X3, which contained a warning regarding the exhaust pipe being hot after the vehicle was driven. BMW thus argued that because plaintiff had submitted no evidence to show that that warning was inadequate, BMW was entitled to summary judgment on the failure to warn claim.

In opposition to BMW's summary judgment motion, plaintiff conceded that he did not have evidence of a manufacturing defect. Plaintiff maintained, however, that the photographs he had produced established that there was a safer alternative design available. Specifically, plaintiff argued that BMW had previously marketed and sold the 2007 BMW X3 with a tailpipe that did not extend beyond the rear bumper of the vehicle. Plaintiff also

5

argued that a jury could consider BMW's warning in the owner's manual and find that warning inadequate.

On November 20, 2015, after hearing oral argument, the motion court granted summary judgment to BMW and dismissed with prejudice plaintiff's complaint. The court explained the reasons for its ruling in a written opinion issued with its order. On the design defect claim, the court found that the design of the exhaust system of a BMW X3 is an instrumentality with complicated components. Consequently, the court reasoned that a jury needed expert testimony to determine if there was a safer alternative design. Because plaintiff had no expert, the court dismissed his design defect claim.

Addressing the failure to warn claim, the motion court found that the owner's manual of the 2014 BMW X3 provided a warning concerning the exhaust system. The court then found that plaintiff had produced no evidence that the warning was inadequate.

II.

On appeal, plaintiff makes six arguments in challenging the November 20, 2015 order granting summary judgment to BMW. Plaintiff contends: (1) summary judgment should have been denied because there were disputed issues of material fact; (2) the motion court improperly made fact findings concerning the design defect claim; (3) expert testimony was not needed to show the design

6

defect with the tailpipe of the 2014 BMW X3; (4) the motion court had previously ruled that plaintiff's design defect claim involved questions of fact that a jury needed to resolve; (5) the motion court never considered the consumer expectation analysis of his design defect claim; and (6) the adequacy of BMW's warning was a question of fact for a jury to decide.

In reviewing a summary judgment order, we use a de novo standard of review and apply the same standard employed by the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). Accordingly, we determine whether the moving party has demonstrated that there are no genuine disputes as to material facts and, if so, whether the facts, viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law. Id. at 405-06; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46.

The PLA recognizes three claims: design defect, manufacturing defect, and failure to warn. N.J.S.A. 2A:58C-2; Roberts v. Rich Foods, Inc., 139 N.J. 365, 375 (1995); Dziewiecki v. Bakula, 361 N.J. Super. 90, 97 (App. Div. 2003), aff'd, 180 N.J. 528 (2004). Here, in response to BMW's summary judgment motion, plaintiff acknowledged that he was not pursuing a claim of a manufacturing defect. Accordingly, we analyze his claims of a design defect and a failure to warn.

A.   Design Defect

To prove a design defect under the PLA, a plaintiff must establish that the product was "designed in a defective manner." N.J.S.A. 2A:58C-2(c).  Moreover, a plaintiff must demonstrate that the product "was not reasonably fit, suitable or safe for its intended purpose."  Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95 (1990) (quoting N.J.S.A. 2A:58C-2).  Accordingly, a plaintiff must prove either that the product's risk outweighs its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm.  Lewis v. American Cyanamid Co., 155 N.J. 544, 569 (1998).

Under a "risk-utility analysis," a manufacturer is held liable "if the danger posed by the product outweighs the benefits of the way the product was designed and marketed."  Johansen v. Makita USA, Inc., 128 N.J. 86, 95 (1992).  Our Supreme Court has identified seven factors relevant to such inquiries.  O'Brien v. Muskin Corp., 94 N.J. 169, 182 (1983).  Those factors include:

> 1.   The usefulness and desirability of the product—its utility to the user and to the public as a whole.
>
> 2.   The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.
>
> 3.   The availability of a substitute product which would meet the same need and not be as unsafe.

4. The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

5. The user's ability to avoid danger by the exercise of care in the use of the product.

6. The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions.

7. The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

[Ibid.]

A risk-utility analysis ordinarily involves "the consideration of available alternatives." Id. at 184; see also Restatement (Third) of Torts: Products Liability § 2(b) (1998). A plaintiff must generally prove that the product "could have been designed in an alternative manner so as to minimize or eliminate the risk of harm." Lewis, supra, 155 N.J. at 570. This burden includes the duty to prove "the existence of an alternative design that is both practical and feasible." Id. at 571; see also N.J.S.A. 2A:58C-3(a)(1) (instructing that a manufacturer may not be held liable "if . . . [a]t the time the product left the control of the manufacturer, there was not a practical and technically

feasible alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of the product").[1]

An expert opinion is ordinarily needed to establish that a reasonable alternative design existed. <u>Rocco v. New Jersey Transit Rail Operations, Inc.</u>, 330 <u>N.J. Super.</u> 320, 341 (App. Div. 2002). Expert testimony is required when the subject matter to be addressed "is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." <u>Ibid.</u> (quoting <u>Butler v. Acme Markets, Inc.</u>, 89 <u>N.J.</u> 270, 283 (1982)). "Where the case involves a complex instrumentality, expert testimony is needed in order to help the fact-finder understand 'the mechanical intricacies of the instrumentality' and help to exclude other possible causes of the accident." <u>Ibid.</u> (quoting <u>Jimenez v. GNOC, Corp.</u>, 286 <u>N.J. Super.</u> 533, 546 (App. Div.), <u>certif. denied</u>, 145 <u>N.J.</u> 374 (1996)).

---

[1] An evaluation of the seven factors identified in <u>O'Brien</u> "may justify a conclusion that even though there is presently no alternative design which would make a product safer, the product is 'so dangerous and of such little use that under the risk-utility analysis [the] manufacturer [should] bear the cost of liability of harm to others.'" <u>Smith v. Keller Ladder Co.</u>, 275 <u>N.J. Super.</u> 280, 283-84 (App. Div. 1994) (alterations in original) (quoting <u>O'Brien</u>, <u>supra</u>, 94 <u>N.J.</u> at 184). In this case, plaintiff is arguing that there was an alternative design.

An expert is not, however, always needed to establish a design defect in a product liability claim. A plaintiff can produce circumstantial evidence of a defect "such as proof of proper use, handling or operation of the product and the nature of the malfunction, [which] may be enough to satisfy the requirement that something is wrong with [the product]." Scanlon v. General Motors Corp., 65 N.J. 582, 591 (1974). The res ipsa loquitur doctrine, however, is not available to product liability plaintiffs. Myrlak v. Port Auth., 157 N.J. 84, 102 (1999).

In this case, plaintiff argues that the design defect in question was a self-evident defect and no expert testimony was required. See Suter v. San Angelino Foundry & Mach. Co., 81 N.J. 150, 170-71 (1979). To support that position, plaintiff relies on the photographs that he produced during discovery. As noted earlier, the photographs of his 2014 BMW X3 show that the tailpipe extended beyond the bumper and could come into contact with a person walking or standing behind the vehicle. Plaintiff also submitted photographs of a 2007 BMW X3 model where the tailpipe did not extend beyond the bumper. Consequently, plaintiff argues that a jury could review these photographs and determine that a safer alternative design existed.

Plaintiff also supports his arguments by relying on the complaints of other BMW X3 owners and the recall of the BMW Mini

Cooper S. In that regard, documents produced by BMW in discovery showed that before 2014, BMW had received a number of complaints from owners of BMW X3 vehicles who had been burned by the tailpipe. Plaintiff also produced documents showing that in 2008 the BMW Mini Cooper S was recalled because the tailpipe extended beyond the bumper and was causing burn injuries. Recall letters can serve as evidence of prior remedial conduct by defendants and can be admissible on the issue of a defect and culpable conduct. See Shatz v. TEC Tech. Adhesives, 174 N.J. Super. 135, 141-42 (App. Div. 1980); Lavin v. Fauci, 170 N.J. Super. 403, 409 (App. Div. 1979).

In support of its motion for summary judgment, BMW contended that the exhaust system of the 2014 BMW X3 was an instrumentality with complex components and plaintiff needed an expert to establish that there was a practical and feasible alternative design. BMW did not, however, submit a certification or affidavit establishing that position. In moving for summary judgment, BMW relied on arguments in its brief. Such arguments do not establish an undisputed fact for purposes of summary judgment.

Accordingly, we are compelled to reverse the grant of summary judgment on plaintiff's design defect complaint. BMW was the movant and had the burden to establish that there was no genuine dispute of material fact. Plaintiff presented evidence that there

was such a dispute. BMW did not counter with a certification; rather, BMW asked the trial court to take judicial notice that the exhaust system of the 2014 BMW X3 was a complex instrumentality. As framed by plaintiff, however, his claim was about the exhaust pipe only and not the entire exhaust system. Thus, BMW did not carry its burden of production on the summary judgment motion.

Plaintiff also argues that the trial court failed to consider the consumer expectations test. Under that test, an expert is not required when "it is self-evident that the product is not reasonably suitable and safe and fails to perform, contrary to the user's reasonable expectation that it would 'safely do the jobs for which it was built.'" Suter, supra, 81 N.J. at 170-71 (quoting Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57, 64 (1963)). In Suter, the Court provided an example of a bicycle "whose brakes did not hold because of an improper design[.]" Id. at 171. Unlike a bicycle whose brakes do not function because of improper design, it is not self-evident that the 2014 BMW X3 was not reasonably suitable and safe to do the job for which it was built, transporting occupants from one location to another. Indeed, plaintiff has presented no evidence that the exhaust pipe interfered with his ability to safely drive the vehicle. Thus, the consumer expectations test does not apply in this case.

B.  Failure to Warn

The PLA defines "a warning defect by defining its opposite, an adequate warning." Zaza v. Marquess & Nell, 144 N.J. 34, 55 (1996). N.J.S.A. 2A:58C-4 provides:

> In any product liability action the manufacturer or seller shall not be liable for harm caused by a failure to warn if the product contains an adequate warning or instruction . . . An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used[.]

Here, BMW provided a warning. In the owner's manual of the 2014 BMW X3, BMW warned owners that the exhaust pipe could be hot. Specifically, the manual states that the exhaust pipe becomes hot and it warned: "Do not touch hot exhaust pipes; otherwise, there is the danger of getting burned." At his deposition, plaintiff conceded that he never read the owner's manual. More significantly, plaintiff presented no evidence that an alternative or more complete warning should have been provided. Instead, plaintiff contends that he should be allowed to argue to a jury that the warning in the owner's manual was not adequate. Such an argument does not carry plaintiff's burden on a failure to warn

claim. Accordingly, because BMW did present a warning, and because there was no contrary evidence that that warning was inadequate, BMW was entitled to summary judgment on plaintiff's failure to warn claim.

The dismissal of plaintiff's design defect claim is reversed. That claim is remanded for further proceedings. The dismissal of plaintiff's failure to warn claim is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1765-15T1