275 N.J. Super. 280 (1994)
645 A.2d 1269
PETER SMITH AND BEATRICE SMITH, PLAINTIFFS-APPELLANTS,
v.
KELLER LADDER COMPANY, DEFENDANT-RESPONDENT, AND JAEGER LUMBER COMPANY AND ABC COMPANY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1993.
Decided August 2, 1994.
*281 Before Judges MICHELS, SKILLMAN and KESTIN.
Leonard A. Wolkstein argued the cause for appellants (Gutterman, Wolkstein, Klinger & Yohalem, attorneys; Mr. Wolkstein, of counsel; Laura M. Le Winn and Mr. Wolkstein, on the brief).
John W. Reinman argued the cause for respondent (Lamb, Hartung, Kretzer, Reinman & De Pascale, attorneys; Mr. Reinman, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*282 Plaintiff Peter Smith is the owner of a roofing company. At approximately 4:00 p.m. on September 26, 1986, plaintiff arrived at a job site in Moonachie to deliver paychecks to his employees. Plaintiff climbed an extension ladder, which was manufactured by defendant Keller Industries, Inc. (Keller) and sold by defendant Jaeger Lumber Company, Inc. (Jaeger), to get onto the roof of the commercial building where his employees were working. After delivering the checks, plaintiff returned to the ladder. However, as he began his descent, the ladder either collapsed or slipped and plaintiff fell to the ground, suffering serious injuries.
Plaintiff brought this products liability action alleging that the ladder had been defectively designed. Prior to submission of the case to the jury, plaintiff withdrew his complaint against Jaeger and proceeded solely against defendant Keller. The jury found defendant liable, but also attributed 50% comparative fault to plaintiff. The jury awarded plaintiff $115,000 and also awarded his wife, plaintiff Beatrice Smith, $50,000 on her per quod claim.
The trial court granted defendant's motion for a judgment notwithstanding the verdict on the ground that plaintiff's liability expert had not testified that there was any reasonably feasible alternative design which would have made the ladder safer. The court also indicated that the $50,000 award in favor of Beatrice Smith was excessive.
Plaintiff appeals from the judgment notwithstanding the verdict, contending that his expert's testimony was sufficient to establish that the ladder was defectively designed. Plaintiff also argues that the trial court erred in submitting the issue of his contributory fault to the jury, and that the jury's verdict on his wife's per quod claim was not excessive.
We conclude that the trial court correctly granted defendant's motion for judgment notwithstanding the verdict. This conclusion makes it unnecessary for us to address plaintiff's other points.
*283 Since this action was filed after July 22, 1987, it is governed by the Products Liability Act, N.J.S.A. 2A:58C-1 to -7. L. 1987, c. 197, § 8. Under this legislation, a seller or manufacturer is liable for injury caused by a product which "was not reasonably fit, suitable or safe for its intended purpose because it ... was designed in a defective manner." N.J.S.A. 2A:58C-2(c). Liability under this provision is "to be determined according to the existing common law of the State." Senate Judiciary Committee Statement, Senate Bill No. 2805, reprinted in N.J.S.A. 2A:58C-1, at 464; see Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 94-95, 577 A.2d 1239 (1990).
The determination whether a product has been defectively designed ordinarily involves a "risk-utility analysis," under which a manufacturer is held liable only "if the danger posed by the product outweighs the benefits of the way the product was designed and marketed." Johansen v. Makita U.S.A., Inc., 128 N.J. 86, 95, 607 A.2d 637 (1992). There are seven factors which the Court has identified as being relevant to a risk-utility analysis:
1. The usefulness and desirability of the product  its utility to the user and to the public as a whole.
2. The safety aspects of the product  the likelihood that it will cause injury, and the probable seriousness of the injury.
3. The availability of a substitute product [that] would meet the need and not be as unsafe.
4. The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
5. The user's ability to avoid danger by the exercise of care in the use of the product.
6. The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions.
7. The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.
[O'Brien v. Muskin Corp., 94 N.J. 169, 182, 463 A.2d 298 (1983) (quoting Cepeda v. Cumberland Eng'g Co., 76 N.J. 152, 174, 386 A.2d 816 (1978)).]
An evaluation of these factors may justify a conclusion that even though there is presently no alternative design which would make a product safer, the product is "so dangerous and of such *284 little use that under the risk-utility analysis [the] manufacturer [should] bear the cost of liability of harm to others." O'Brien v. Muskin Corp., supra, 94 N.J. at 184, 463 A.2d 298. However, a risk-utility analysis ordinarily involves "the consideration of available alternatives." Ibid. Therefore, unless there is some basis for a jury to find that the risks involved in a product's use outweigh its utility even though there is no reasonably feasible alternative design, a plaintiff in a design-defect case is required to show the existence of "a safe and reasonably feasible alternative to [the] defendant's product." Macri v. Ames McDonough Co., 211 N.J. Super. 636, 641, 512 A.2d 548 (App.Div. 1986); see also N.J.S.A. 2A:58C-3(a)(1) (A manufacturer may not be held liable in a design-defect product liability action "if ... [a]t the time the product left the control of the manufacturer, there was not a practical and technically feasible alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of the product.").
This conclusion is reinforced by the current tentative draft of the proposed third Restatement of Torts, which endorses the position that a plaintiff in a design-defect products liability action must show the existence of reasonable alternative design:
A product is defective in design when the foreseeable risks of harm posed by the product could have been reduced by the adoption of a reasonable alternative design by the seller or a predecessor or in the commercial chain of distribution and the omission of the alternative design renders the product not reasonably safe....
[Restatement (Third) of Torts § 2(b) (Tent. Draft No. 1 1994).]
Under this provision, "[t]o establish a prima facie case of defect, plaintiff must prove the availability of a technologically feasible and practical alternative design that would have reduced or prevented plaintiff's harm." Id. cmt. d at 20.
Plaintiff failed to present any evidence suggesting either that there was a reasonably feasible alternative design which would have made defendant's ladder safer, or that the ladder was so dangerous and of so little use that defendant should bear the liability for any harm to others notwithstanding the absence of a reasonably feasible alternative design. Plaintiff's expert, Seymour *285 Bodner, expressed the opinion that plaintiff's accident was caused by a slip of the upper section of the extension ladder because the rung locks were deformed and consequently did not work properly at the time of the accident. Bodner attributed the deformity in the rung locks to "wear and tear" which occurred "over the course of time." When asked to identify the defect in the rung locks' design, Bodner stated:
The configuration of the rung lock and the special relationships of the various parts with respect to each other, the clearances between the flipper and base rung, the distance between the pivot of the rung lock and the point where the flipper is mounted and the size of the flipper, together with the fact that the rung lock is made out of a piece of aluminum which has a given strength or a given size. In that configuration, it just couldn't resist the forces that occurred during the use of the ladder.
But when he was asked whether he had done any kind of risk-utility analysis, Bodner stated:
No. I didn't feel it was necessary. We're not talking in this case of a machine or a part which is unique and if you don't make it that way and have the associated risks, you don't have a functional item. We have a ladder. And all extension ladders have some means of supporting the fly section and call it the rung lock or fly lock. And there was no question but that the ladder has to have a fly lock. It was merely a question of the design of the particular fly lock that they have on here. And there is no lack of utility if you change a design of the fly lock. There is no change in cost. There is no reason to build a risk utility analysis.
Moreover, Bodner never testified that there was a reasonably feasible alternative design for defendant's extension ladder which would have eliminated the defect he identified.[1]
Thus, Bodner simply testified in conclusionary terms that the ladder was defective, without indicating how defendant could have "eliminate[d] [its] unsafe character ... without impairing its usefulness or making it too expensive to maintain its utility." Johansen *286 v. Makita U.S.A., Inc., supra, 128 N.J. at 96, 607 A.2d 637 (quoting Cepeda v. Cumberland Eng'g Co., supra, 76 N.J. at 174, 386 A.2d 816). Nor did Bodner discuss any of the other factors which are relevant to a risk-utility analysis. Consequently, plaintiff failed to present any evidence from which the jury could have concluded that the ladder was "so dangerous and of such little use that [defendant should] bear the cost of liability of harm to others," notwithstanding the absence of any proof of a reasonably feasible alternative design. O'Brien v. Muskin Corp., supra, 94 N.J. at 184, 463 A.2d 298. Therefore, the trial court correctly concluded that plaintiff failed to present sufficient evidence from which the jury could have reasonably concluded that the extension ladder which defendant manufactured was defectively designed.
Affirmed.
NOTES
[1] We note that after plaintiff completed his direct examination of Bodner, the trial court asked Bodner whether there was any way the design of the rung lock could be changed "to obviate the problem you saw." However, defendant objected to this question on the ground that Bodner had not suggested any alternative design in his expert report, and the trial court sustained this objection. Plaintiff did not pursue the subject further at trial, nor does he argue on this appeal that the trial court erred in sustaining defendant's objection to the court's question regarding a possible alternative design of the ladder.