897 A.2d 438 (2006)
385 N.J. Super. 434
Nicole DILUZIO-GULINO, Plaintiff-Respondent/Cross-Appellant,
v.
DAIMLER CHRYSLER CORPORATION, Defendant-Appellant/Cross-Respondent, and
Dodge Automotive Manufacturing, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 2006.
Decided May 17, 2006.
Richard J. Mirra, Edison, argued the cause for appellant/ cross-respondent (Hanlon, Boglioli & Hanlon and Chase, Kurshan, Herzfeld & Rubin, attorneys; Mr. Mirra, on the brief; Michael Hoenig and Miriam Skolnik, of counsel and on the brief).
Robyn M. Gnudi, New York City, argued the cause for respondent/cross-appellant *439 (St. John & Wayne, attorneys; Ms. Gnudi, on the brief).
Before Judges COBURN, COLLESTER and S.L. REISNER.
The opinion of the court was delivered by
COBURN, P.J.A.D.
In this products liability case, plaintiff tried to prove by expert testimony that the airbag in her car had a manufacturing defect or a design defect that caused it to deploy and injure her when it should not have deployed. When plaintiff rested, defendant moved for judgment, arguing that plaintiff's expert had failed to provide adequate evidence to support either form of defect. The judge denied the motion. The jury rejected the manufacturing defect claim, but found for plaintiff on the alleged design defect and awarded her $125,000 in compensatory damages. Plaintiff moved for a new trial on damages, and defendant, relying primarily on the inadequacy of plaintiff's expert's testimony, moved for judgment notwithstanding the verdict. The judge denied the motions, and both sides appealed. We reverse the judgment against defendant because plaintiff's expert failed to provide evidence of an alternative safer design.
On March 30, 1997, plaintiff, Nicole Diluzio-Gulino, was involved in a two-car accident on Route 23 in Wayne. She was driving a car manufactured by defendant Daimler Chrysler Corporation. The accident happened when another car pulled onto the road in front of her. She braked hard but could not avoid hitting the other car. The airbag deployed on impact, slamming her arm into the door, and causing a "significant" "fracture dislocation to [her] left elbow." An emergency room doctor relocated her arm, and an orthopedic surgeon performed an open reduction of the fracture, which required placement of a plate and six screws in her elbow. She had physical therapy for about eight months, but she continues to experience "sharp, striking pain" at times and "a general soreness and a weakness." The mobility of her arm is now limited by traumatic arthritis.
The dispute about Daimler's airbag focused on its settings for deployment and the Barrier Equivalent Velocity ("BEV") of plaintiff's car at impact. BEV is a term of art employed by all concerned, meaning, in essence, a speed at which a vehicle goes head on into a barrier, measured in miles per hour. Airbags are set to deploy at various BEVs. The BEV of a car in a particular accident is a complex question since collisions occur in all sorts of ways, but the parties agree that the safety of deployment settings and the impact of the accident are properly measured in BEVs.
Plaintiff's engineering expert, Eric Carlsson, testified first on the subject of manufacturing defect. He said that the design of the BEV settings in plaintiff's car were such that the airbag would not deploy up to 8 BEV, may deploy between 8 and 14 BEV, and would deploy at over 14 BEV. He said that the BEV for plaintiff's car was "well below" 8 at the time of the impact. And that conclusion, which he reiterated a number of times, was explained to the jury in great detail. Indeed, the overwhelming bulk of his testimony related to that conclusion and his further conclusion that this proved that there was a manufacturing defect of some undefined nature.
The expert was then questioned about the supposed design defect. The first question was this: "[D]o you have an opinion as to whether or not the eight mile per hour threshold for may fire of the air bag was reasonable in this case?" Before describing his answer, we should note the *440 apparent irrelevance of the question in light of the expert's prior testimony. Not only had the expert previously testified that the BEV of plaintiff's car in this accident was less than 8, he had, as well, expressly rejected the contrary opinion of defendant's expert that the BEV of plaintiff's car was between 9 and 10. Thus, based on his reconstruction of the forces involved in the accident, the 8 may-deploy setting had nothing to do with the case. Nonetheless, the expert replied in answer to the question that within a reasonable degree of engineering probability a BEV may-deploy setting of 8 was too low. He offered the following explanation:
Because the air bag  air bags I would say, are intended to reduce injuries in collisions. It is known that the air bags will cause injuries. The reasoning there is that if the air bag causes more injuries than it prevents then it should not deploy. The deployment should only occur when the air bag reduces the injury, which is to say that when the injuries caused by the accident and the air bag [are] less than the injuries you would have sustained without the air bag there, then the air bag should deploy.
In reaching his conclusion, the expert relied on a number of technical reports, some of which were placed in evidence. Although those reports expressed concerns respecting BEV settings that allow deployment of the airbag in low speed accidents, such as occurred here, and suggested exploration of using higher settings, none of them provided data demonstrating what the lowest setting should be for maximum overall safety.
As to an alternative design, the expert's testimony was limited by the judge's rulings, which are not questioned on appeal by plaintiff, to the concept that an airbag could be designed with a higher than 8 may-deploy BEV without specifying what that higher BEV might be. The expert admitted that he did not know how many more deaths would occur in crashes with unbelted occupants if Daimler had implemented his recommendation, and, as already noted, none of the technical reports on which he relied provided specific data in support of any particular setting for low impact accidents.
The trial judge gave the following reasons for denying Daimler's motion for judgment at the end of plaintiff's case:
An application to dismiss a matter at the end of the plaintiff's case muse be based on the ground that the evidence together with the legitimate inferences therefrom could not sustain a judgment in plaintiff's favor.
Our Supreme Court has held that the judicial function of such a motion is quite a mechanical one. The trial Court is not concerned with the worth, the nature or extent beyond a scintilla of the evidence but only with its existence viewed most favorably to the party opposing the motion.
In this case we have testimony from Mr. Carlsson the Court admitted to the effect that the system should not have been designed to permit  require the air bag to deploy at eight. The argument about an alternative design, it's clear from the evidence that the manufacturer had the ability to make a determination that it could be higher than eight. So there was certainly a potential for a reasonable alternate design as to whether this was reasonable. A natural inference from the testimony of Mr. Carlsson is that if eight is too low then the reasonable alternative is somewhat higher. So I'm satisfied the jury could reach such a determination based on the evidence before it in the application.
Even assuming that the jury was entitled to base its decision on defendant's *441 expert's opinion with respect to the BEV of plaintiff's car at the moment of impact, we disagree with the trial judge's reasoning, which he reiterated when denying defendant's motion for judgment notwithstanding the verdict. A plaintiff asserting a design defect in a products liability action "must prove under a risk-utility analysis the existence of an alternate design that is both practical and feasible," and "safer" than that used by the manufacturer. Lewis v. Am. Cyanamid Co., 155 N.J. 544, 571, 715 A.2d 967 (1998). Expert testimony in conclusionary terms is insufficient to meet that burden. Smith v. Keller Ladder Co., 275 N.J.Super. 280, 285-86, 645 A.2d 1269 (App.Div.1994).
To meet plaintiff's burden of proving a safer alternative design, plaintiff's expert had to show more than that the deployment caused plaintiff's injury. He had to present an opinion, substantiated by empirical evidence, that "the number of lives saved (or injuries avoided) by adopting [his] alternative design[] would be greater than the corresponding number of lives lost (or injuries sustained) as a result of such adoption." Crespo v. Chrysler Corp., 75 F.Supp.2d 225, 229 (S.D.N.Y.1999); see also Quintana-Ruiz v. Hyundai Motor Corp., 303 F.3d 62, 70-74 (1st Cir.2002); Demaree v. Toyota Motor Corp., 37 F.Supp.2d 959, 966 (W.D.Ky.1999).
The evidence in Crespo was similar to the evidence in the instant case. The air-bag had a may-deploy range of 8 to 14, and the airbag deployed, killing the plaintiff, a young boy. The expert testified by way of alternative design that the airbag should have had a no-deployment setting below 12 BEV, that the ideal range for deployment was between 15 to 20 BEV, or that the air-bag should not have been supplied at all. Crespo, supra, 75 F.Supp.2d at 229. The jury agreed with the expert and returned a $750,000 verdict for plaintiff. Id. at 227. The court granted defendant's motion for judgment notwithstanding the verdict, concluding as follows:
In sum, plaintiff never undertook to provide the jury with a reasonable means of estimating the number of persons beyond [the infant plaintiff] whose lives would be saved (or injuries avoided) by the design alternatives plaintiff recommended, the number of persons whose lives would be lost (or injuries sustained) by any of plaintiff's proposed alternatives, or a reasonable basis for comparing the two. Without such evidence, the jury was without any reasonable basis on which to conclude that any of the plaintiff's proposed alternatives was safer than the allegedly defective air-bag here at issue.
[Id. at 231.]
We agree with Crespo, which applied in this particular context a principle well-settled in this state; namely, that in a design defect products liability case, plaintiff must prove, not only that the alternative design is feasible and practical, but that it is also safer than the manufacturer's design. Since plaintiff failed to meet that burden, defendant was entitled to judgment as a matter of law. Consequently, plaintiff's cross-appeal is moot, and we need not consider defendant's other arguments.
Reversed and remanded for entry of judgment for defendant.