903 A.2d 1120 (2006)
387 N.J. Super. 349
Donald MATHEWS, Plaintiff-Respondent,
v.
UNIVERSITY LOFT COMPANY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 2006.
Decided August 15, 2006.
Robert Douglas Billet argued the cause for appellant (Billet & Connor, attorneys; Scott F. Griffith, Philadelphia, PA, on the brief).
Gary F. Piserchia, Marlton, argued the cause for respondent (Parker McCay, attorneys; Mr. Piserchia, on the brief).
Before Judges STERN, PARKER and GRALL.
*1121 The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant, University Loft Company, appeals from a July 23, 2004 "order of judgment" based on a jury verdict awarding plaintiff $179,001, including prejudgment interest and costs,[1] and from an *1122 order of October 8, 2004, which denied defendant's motion for a new trial and to vacate the judgment.
Plaintiff filed this products liability design, manufacturing, and warning defect case after falling from his loft bed and sustaining injuries. Summary judgment was granted dismissing plaintiff's case except for the claim "based upon lack of warning."
On this appeal defendant argues that summary judgment should have been granted on the failure-to-warn claim and that the case should have been dismissed at the end of plaintiff's case; that the instructions "on the allegation of a failure to warn" were in any event erroneous; that a mistrial should have been granted following plaintiff's "repeated statements and argument[s] to the jury concerning the lack of guardrails on the loft bed despite the court having granted summary judgment on [the design and manufacturing defect] issue[s], and [because of] repeated references in closing to the retail standards for loft beds, with knowledge that the bed in question was sold for industrial use";[2] that the trial judge also "committed an error of law in allowing plaintiff's `warnings expert' to testify concerning the retail standards for warnings and guardrails on loft beds"; and that the jury's verdict was excessive.
We agree with defendant that the failure-to-warn claim should have been dismissed, and we reverse the judgment for plaintiff. In so doing, we note that there is no cross-appeal on the dismissal of the manufacturing and design defect claims that were dismissed on summary judgment.

I.
According to the proofs at trial, in the fall of 1999 plaintiff, then twenty-one years old, was a senior at Stockton State College. He lived with a roommate in a new campus apartment, where he slept in a new "loft bed" which was six feet off the floor.[3] Plaintiff began sleeping on the loft bed in the first week of September 1999. He had never slept on a loft or bunk bed before.
At about noon on October 11, 1999, plaintiff was asleep on the bed when his pager went off. The pager was on the "desk, or dresser area, below the bed." Plaintiff did not hear the pager at first, but his roommate, who also had been sleeping, woke up and yelled to plaintiff to "turn ... off" the pager. Plaintiff testified that "when he yelled over to me to wake up, or, you know, get up, I was startled, and I  the next thing I knew, I was  I fell off the bed, I was on the floor."
Plaintiff landed on his head and left shoulder, and felt "excruciating pain" in his shoulder, which looked "deformed" and had dislocated. After a few minutes he was able to "roll" the shoulder "back into the socket." He went to the school healthcare center from which he was sent to the hospital, where x-rays were taken and he was given pain medication and "a sling to wear for a few weeks."
*1123 Plaintiff resumed sleeping in the loft bed, but subsequently positioned himself "all the way against the wall," as far as possible from the open edge of the bed, because he "didn't want to fall off the bed again." There were no warning labels on the bed, and it had never "cross[ed his] mind" or "occurred to" plaintiff that he could fall or that the bed was dangerous in any way. He testified that had he seen a warning, he would have been "aware of the hazard that was present" and slept closer to the wall, as he had done after the accident. In light of our disposition, we do not detail the proofs concerning damages.
George Widas, a consulting engineer, testified for plaintiff as an expert in "safety engineering, including safety in products, safety in falls from heights, and human factors." At plaintiff's counsel's request, Widas had examined the discovery in this case, as well as defendant's documentation concerning the loft bed in question and the applicable industry standard, which considered any bed higher than three feet off the ground to create a "fall hazard." According to Widas, this bed was six feet high, and thus constituted a "significant risk." In 1989 there had been over 8,000 reported falls from bunk beds by persons over fifteen years old.
Widas testified that when such a risk exists, the proper response is for the manufacturer to provide a "barrier to prevent a sleeping occupant from rolling or sliding out of the bed." If no barrier is provided or it is removable, industry standards require that the manufacturer affix a warning "that says make sure that you protect yourself from this fall hazard[.]" According to Widas, an adequate warning must include "a keyword, an alerting word, such as danger to get people's attention" and must "tell the people what the danger is and how to avoid it." The warning must be in certain colors to attract "attention," must "make the user aware of the means to mitigate the hazard," and must "be displayed on the end board of the bed at a prominent height, eye height, in a location that's readily visible to the user." Widas observed that although there was a manufacturer's sticker on plaintiff's bed, it was not a warning; it was a label that identified the manufacturer and disclaimed liability or responsibility "for property, injury, disability, or death of any persons caused by the ... intended or unintended use of the product." The label had "no alerting word, ... no description of a hazard... and ... no description of any means to avoid the hazard."
Widas drew what he considered to be a proper warning, which was shown to the jury. In Widas's opinion, affixing a warning label conforming to the standards he described, with "black letters on an orange background and wording in the warning to identify the hazard and instruct ... how to avoid [it]," would have been "feasible" and would have made the bed "safe." The lack of such a warning rendered the bed unsafe, as there was a "hazard of significant risk that wasn't mitigated, either by device or warning."
Moreover, the danger was not "obvious," in Widas's opinion, because the risk occurred when the user was asleep:
Q So the danger of a fall from this bed is not open and obvious?
A Not that you will fall out while you're sleeping, that you will roll or slip out while you're sleeping. When you're conscious and awake then you can exercise caution and avoid the edge of the bed; when you're asleep you can't. You need passive protection then. Barrier is passive, meaning you don't have to provide the safety by your behavior, that there is a mechanism that protects you. And when you're asleep you're not in control of your behavior; you roll over in your sleep.

*1124 [Emphasis added.]
According to Widas, "[t]he need for passive protection for sleeping occupants is not open and obvious to the user," and industry standards do not allow a manufacturer to leave to the user the responsibility for his or her own safety.
Defendant's CEO, James Jannetidis, was called to testify as plaintiff's witness. He stated that defendant sold about 30,000 of the loft beds in question to 1200 institutions each year, and sold 250 of the beds to Stockton State in 1999. According to Jannetidis, the federal regulations governing warnings on such beds expressly "exempt[ed]" "colleges and universities and military."
Defendant offered no witnesses at trial.

II.
In her "tentative disposition" denying summary judgment on the failure to warn claim,[4] the motion judge stated:
In this instant case, the loft beds were to be used by college students ranging from 18 to 22 years of age. Thus, the issue is what type of warning is adequate, if a warning is needed at all, to satisfy the requirements of the Products Liability Act. The court finds that there is a genuine question of material fact as to whether a warning on the loft beds was required. The Defendant argues that bunk beds and loft beds are within common knowledge, and like any bed, the characteristics of the loft bed, as well as its potential danger to an adult user, are open and obvious, and do not require any warnings. A statement that the dangers of the loft bed are obvious is not sufficient as a matter of law. Whether a warning should have been included is a question of fact for the jury to decide. Moreover, the Appellate Division in Seeley [v. Cincinnati Shaper Co., 256 N.J.Super. 1, 606 A.2d 378 (App.Div.1992)] held that where no warnings have been given, as in the instant case, their adequacy is almost always a jury question. Id. at 16, 606 A.2d 378.
We agree with defendant that the judge should have granted summary judgment. Defendant had no duty to warn against the danger of falling from the loft bed because the danger was "open and obvious."
A cause of action for failure to warn is governed by the New Jersey Products Liability Act ("PLA"), N.J.S.A. 2A:58C-1 to  11.[5] Under Section 2 of the PLA, N.J.S.A. 2A:58C-2, a plaintiff can prove that a product was defective in one of three ways:
A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer *1125 or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.
[N.J.S.A. 2A:58C-2 (emphasis added).]
A manufacturer may avoid liability "for harm caused by a failure to warn if the product contains an adequate warning or instruction....." N.J.S.A. 2A:58C-4. The PLA defines "adequate product warning" in Section 4.[6] Warnings may be included in printed materials packaged with the product or on labels affixed to the product. They may be in words or pictures, and "pictorial symbols, rather than simply words, may be required to adequately convey safety warnings to some anticipated users." Levey v. Yamaha Motor Corp., 361 N.J.Super. 312, 318, 825 A.2d 554 (App.Div.2003). The form they take is dictated by all of the circumstances, and the adequacy of the chosen form is generally a question for the jury. Ibid.
However, before the adequacy issue arises, there first must be a duty to warn. The leading case on the duty to warn, Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 485 A.2d 305 (1984), predates the PLA. In Campos, the Supreme Court observed that a manufacturer clearly had a duty to warn against "all hidden or latent dangers that would arise out of a reasonably anticipated use of its product." Id. at 206, 485 A.2d 305. However, the Court also observed that, under the right circumstances, the duty to warn might extend to obvious dangers as well:
[I]n our state the obviousness of a danger, as distinguished from a plaintiff's subjective knowledge of a danger, is merely one element to be factored into the analysis to determine whether a duty to warn exists. A manufacturer is not automatically relieved of his duty to warn merely because the danger is patent.
[Id. at 207, 485 A.2d 305.]
Accord Fabian v. Minster Mach. Co., Inc., 258 N.J.Super. 261, 278-79, 609 A.2d 487 (App.Div.), certif. denied, 130 N.J. 598, 617 A.2d 1220 (1992).
Under Campos, "whether a duty to warn exists when the danger is obvious" "`involves a weighing of the relationship of the parties, the nature of the risk, and the public interest....'" Campos, supra, 98 N.J. at 207, 485 A.2d 305 (quoting Goldberg v. Housing Auth., 38 N.J. 578, 583, 186 A.2d 291 (1962)). The relevant questions include whether
the lack of the warning [is] consonant with the duty to place in the stream of commerce only products that are reasonably safe, suitable, and fit? Will the absence of a duty encourage manufacturers to eliminate warnings or to produce inadequate warnings? Is the danger so basic to the functioning or purpose of the productfor example, the fact that a match will burnthat a warning would serve no useful purpose?
[Id. at 207-08, 485 A.2d 305.]
Under the facts of Campos, in which the plaintiff-employee inserted his hand into a tire rim assembly while a tire was being inflated, the Court held that the manufacturer had a duty to warn against the danger, and that warnings "in the form of symbols might have been appropriate" because "of the unskilled or semi-skilled nature of the work and the existence of many in the work force who do not read *1126 English...." Id. at 208, 485 A.2d 305. The Court rejected the manufacturer's claim that its duty was negated by evidence that the employee had actual knowledge of the hazard, stating that "[a] duty to warn is not automatically extinguished because the injured user or consumer perceived the danger." Id. at 209, 485 A.2d 305. Such "preexisting knowledge, however, might negate a claim that the absence of a warning was a cause in fact of plaintiff's injury." Ibid. A jury question was thus presented, and the "cause of action predicated upon a failure to provide an adequate warning [was] remanded for a new trial[,]" at which the trial court was required to charge the jury to determine whether the presence of a warning would have avoided the accident; in other words, whether the plaintiff would have "heeded" a warning "if given." Id. at 211, 485 A.2d 305. The Court instructed that the issue of causation had to be placed "before the jury in the factual context of the case." Id. at 210, 485 A.2d 305. Accord Coffman v. Keene Corp., 133 N.J. 581, 594, 602-03, 628 A.2d 710 (1993).
"The Product Liability Act does not directly address the issue of the duty to warn of obvious danger[,]" Dreier, Keefe & Katz, Current N.J. Products Liability & Toxic Torts Law, § 6:3-1 at 69, but N.J.S.A. 2A:58C-4 defines what constitutes an "adequate product warning." It provides in relevant part:
An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used....
[N.J.S.A. 2A:58C-4.]
Hence, if under those standards, no warning is adequate, none should be required; and under the facts of this case we are satisfied that summary judgment should have been granted to defendant. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).[7]
The Restatement (Third) of Torts: Products Liability § 2 (1998) provides that a product
is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe. [Restatement (Third) of Torts: Products Liability § 2(c).]
Indeed, the comments and illustrations in the updated Restatement are instructive:
In general, a product seller is not subject to liability for failing to warn or instruct regarding risks and risk-avoidance measures that should be obvious to, or generally known by, foreseeable product users. When a risk is obvious or generally known, the prospective addressee of a warning will or should already know of its existence. Warning of an obvious or generally known risk in most instances will not provide an effective additional measure of safety. Furthermore, warnings that deal with obvious or generally known risks may be *1127 ignored by users and consumers and may diminish the significance of warnings about non-obvious, not-generally-known risks. Thus, requiring warnings of obvious or generally known risks could reduce the efficacy of warnings generally. When reasonable minds may differ as to whether the risk was obvious or generally known, the issue is to be decided by the trier of fact. The obviousness of risk may bear on the issue of design defect rather than failure to warn.
[Restatement (Third) of Torts: Products Liability § 2 comment j (emphasis added).]
Therefore, under the updated Restatement, where the dangers or risks are obvious, no warning is necessary. See Restatement (Third) of Torts: Products Liability § 2, Reporters' Notes, comment a (Rationale).
The PLA was codified in 1987, based, in part, upon the Restatement (Second) of Torts. See Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 97-99, 577 A.2d 1239 (1990). The PLA "has been interpreted as evincing a legislative policy to limit the expansion of products-liability law ... so as to balance[] the interests of the public and the individual with a view towards economic reality." Zaza v. Marquess and Nell, Inc., 144 N.J. 34, 47-48, 675 A.2d 620 (1996) (internal citations and quotation marks omitted). In Dewey, supra, 121 N.J. at 94, 577 A.2d 1239, our Supreme Court considered whether the PLA, which "provides a defense to manufacturers and sellers for harms caused by products whose dangerous propensities are known to the ordinary user, can retroactively insulate these defendants from liability for design defects inherent in their cigarettes." The Court explained that the defense in N.J.S.A. 2A:58C-3a(2), regarding design defect, "combines the `consumer expectations' doctrine for determining whether a product is defective, with the obvious-danger factor of the risk-utility analysis [in Campos], to create a defense to a design-defect claim." Id. at 96, 577 A.2d 1239 (internal citations omitted).[8] "In enacting that provision, the [PLA] drastically changed the method of analyzing products-liability cases[,]" as developed in prior case law. Ibid. Among other things, the Court found that "Section 3a(2)... modifie[d] the method of analyzing `obvious danger' as established in" Campos. Ibid. Thus, the Court expressly stated that, in future cases, "[i]nstead of representing a single factor in the analysis, `obvious danger' has now been transformed into a defense, except in instances involving industrial machinery or other workplace equipment." Id. at 96-97, 577 A.2d 1239 (citing Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 160-68, 406 A.2d 140 (1979)).[9]
*1128 Dewey reached this conclusion in analyzing the plaintiff's design defect cause of action. Although the Court reinstated plaintiff's failure-to-warn claim because there was no federal preemption and no retroactive state preclusion, id. at 100, 577 A.2d 1239, the Court nevertheless noted that N.J.S.A. 2A:58C-3a(2) modified the Campos "obvious danger" standard which is relevant in the analysis of duty to warn causes of action. Dewey, 121 N.J. at 96, 577 A.2d 1239. The Court specifically acknowledged that the Campos standard for determining whether there was a duty to warn users about obvious dangers had been modified by the PLA, and that section 3a(2) had elevated the obviousness of the danger from just one factor to be considered to an absolute defense. Ibid. See also Roberts v. Rich Foods, 139 N.J. 365, 378, 654 A.2d 1365 (1995). Hence, the elimination of design defect liability where the dangers were inherent and obvious had a direct impact on the common law governing the duty to warn.
Following Dewey, some New Jersey courts continued to rely on Campos when analyzing failure-to-warn causes of action, limiting the section 3a(2) absolute defense for obvious dangers to design defect claims, as contemplated by the wording of N.J.S.A. 2A:58C-3. See, e.g., Fabian, supra, 258 N.J.Super. at 278-79, 609 A.2d 487 (noting that an "obvious danger" is now "an absolute defense in design defect cases, except in accidents involving industrial machinery" but that "although the statutory defense is expressly unavailable as an absolute defense for industrial machinery under the design defect section of the Act, ... [n]othing in the Act or case law suggests that the obviousness of danger may not be considered as a factor to establish what is an `adequate warning' under N.J.S.A. 2A:58C-4, or whether a breach of that duty could be a proximate cause of the accident.").
However, our courts have also recognized the similarity and interrelation between design defect and failure-to-warn causes of action, and utilize the same framework to analyze liability in both types of cases. "[T]he ultimate question to be resolved in [both] design-defect and failure-to-warn cases is whether the manufacturer acted in a reasonably prudent manner in designing and fabricating a product." Zaza, supra, 144 N.J. at 49, 675 A.2d 620. Thus, "[a] plaintiff asserting a cause of action based on failure to warn must establish all the same elements required for an action based on a defective product." London v. Lederle Labs., 290 N.J.Super. 318, 326, 675 A.2d 1133 (App. Div.1996), aff'd as modified by Batson v. Lederle Labs., 152 N.J. 14, 702 A.2d 471 (1997). See also Clark v. Safety-Kleen Corp., 179 N.J. 318, 336, 845 A.2d 587 (2004). We do not think that a "reasonably prudent person" would see a need to warn users of beds sold for use by college students about the obvious and generally known risks inherent to products that were not defectively designed as a matter of law. N.J.S.A. 2A:58C-4.
Based on the development of law by enactment of the PLA and case law since Campos,[10] we hold that the obviousness of *1129 the danger is an absolute defense to plaintiff's failure to warn action in this case. N.J.S.A. 2A:58C-3a(2), -4; Dewey, supra, 121 N.J. at 96, 577 A.2d 1239. As noted in the Restatement (Third) of Torts: Products Liability § 2 comment j, warnings would lose their efficacy and meaning if they were placed on every instrument known to be dangerous, such as a knife, scissor, glass, bat, ball, bicycle, or other product that poses a generally-known risk of injury if misused, dropped, or fallen from. Moreover, as plaintiff's own expert stated, "when you're asleep you're not in control of your behavior; you roll over in your sleep." The risks are so obvious here that we fail to see what a college student would or could have done differently while asleep to protect himself from falling, or what a warning could have advised in addition to the obvious.

III.
We reverse the judgment for plaintiff and remand for entry of a judgment dismissing the complaint.
NOTES
[1] The lost wages portion of the award in the amount of $50,000 was diminished by one-third to $35,000 by agreement "for taxes."
[2] Before trial, the court precluded use of plaintiff's expert's report and testimony "relating to the absence of guardrails on the defendant's product," because "as a matter of law there is no design defect, and ... no manufacturing defect," since institutions do not have to buy loft beds with guardrails. The court noted that plaintiff's "real complaint... is against the college who chose to buy beds without guardrails," leaving the issue of "whether the manufacturer should have put some sort of warning ... when this bed is six feet off the ground" for the jury to decide.
[3] Defendant defines "loft bed" as "essentially a bunk bed, but instead of there being a top bed and bottom bed, there is a top bed and an empty space below, where the student can put a desk, dresser, etc."
[4] In the same opinion, the judge granted summary judgment to defendant "on the issue of negligence, breach of implied warranties, breach of express warranties, misrepresentation, volitional/knowledge conduct, reckless disregard, and punitive damages" as "[t]here [was] no evidence presented to support a claim under any of these theories." The order of April 4, 2003, dismissing all claims "except for [the] cause of action based upon lack of warning" suggests that the judge adhered to that decision after argument. No transcript of the argument has been presented to us.
[5] As pointed out by the Senate Judiciary Committee Statement to S.2085, which became L. 1987, c. 197, N.J.S.A. 2A:58C-1 to -5, "[e]xcept as modified by the provisions of [N.J.S.A. 2A:58C-3 and -4], the elements of these causes of action [under N.J.S.A. 2A:58C-2] are to be determined according to existing common law of the State."
[6] N.J.S.A. 2A:58C-3 entitled "Defenses," relates to design defect cases, while N.J.S.A. 2A:58C-4, entitled "Adequate product warning or instruction; rebuttable presumption of adequacy after approval," provides defenses to warning defect cases. See Dreier, Keefe & Katz, Current N.J. Products Liability & Toxic Torts Law, § 6:1 at 65 (2005).
[7] We have recited the trial testimony and conclude that the case should also have been dismissed on defendant's motion at the end of plaintiff's case when defendant moved for dismissal under R. 4:37-2(b) in the absence of "a duty to warn for those dangers which are open and obvious." See Brill, supra, 142 N.J. at 535-36, 666 A.2d 146.
[8] N.J.S.A. 2A:58C-3a(2) provides:

a. In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if:
. . . . .
(2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended, except that this paragraph shall not apply to industrial machinery or other equipment used in the workplace and it is not intended to apply to dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product ...
[9] The Court also noted that the statute's "new rules regarding the burden of proof and the imposition of liability ... are not to be applied to products-liability actions instituted on or before the date of enactment...." Id. at 95, 577 A.2d 1239. Accordingly, the Court held that the "obvious danger" defense of N.J.S.A. 2A:58C-3a(2) did not apply to Dewey because it was already pending when the PLA was enacted. Ibid.
[10] See Zaza, supra, 144 N.J. at 52, 68-69, 675 A.2d 620 (relying on Tentative Draft of Restatement (Third) of Torts). See also, e.g., William A. Dreier, The Restatement (Third) of Torts: Products Liability and New Jersey LawNot Quite Perfect Together, 50 Rutgers L.Rev. 2059, 2089-94 (1998); Cavanaugh v. Skil Corp., 164 N.J. 1, 7-10, 751 A.2d 518 (2000) (discussing burdens relating to the state-of-the-art defense under Restatement (Third) of Torts in design defect case); Myrlak v. Port Authority, 157 N.J. 84, 103-07, 723 A.2d 45 (1999) (adopting Restatement (Third) of Torts "indeterminate product defect test").