

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-23-2008

# Toms v. JC Penney Co Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4232

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Toms v. JC Penney Co Inc" (2008). 2008 Decisions. Paper 59.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/59

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4232
_____

JOANNE TOMS;
COLIN TOMS,

                                        Appellants

v.

J.C. PENNEY COMPANY, INC.
JOHN DOES 1-10 (fictitious entities)

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 05-cv-02582)
District Judge:  Honorable Peter G. Sheridan

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 9, 2008

Before: MCKEE, SMITH, and ROTH, Circuit Judges

(Opinion filed: December 23, 2008 )

_____

OPINION
_____

SMITH, Circuit Judge.

    Joanne Toms appeals from the District Court's entry of summary judgment against

her in this products liability action.  For the reasons that follow, we will affirm.

Appellant purchased a terry cloth robe from the J.C. Penney store in Freehold, New Jersey on August 25, 2002. On April 25, 2003, while living at an Easter Seals resident group home in Freehold, Appellant went outside to smoke a cigarette on the porch of the home at some point between 12:30 and 1:00 in the morning. Appellant claimed that she dropped a match she was using to light her cigarette onto the collar of the robe, "heard an 'explosion' as the match came in contact with the collar, and the flames immediately spread upward from the collar towards her face, down her sleeve, and down the remaining portion of the robe towards her legs." (At. Br. 7.) She ran down the steps of the exterior porch, "and was eventually able to take the burning robe off of her body while it was still in flames." (Id.)

Philip Wilensky, Appellant's only supporting witness, stated that he saw Appellant exit the building to smoke a cigarette, heard her scream a few minutes later, opened the door, and observed that Appellant's robe had caught fire. At his deposition, he testified: "I noticed her arms and her shoulders were aflame. You could see the flames coming up. I just noticed like her shoulders. It seemed like both arms had smoke and flames coming up from them." (App. 192.) Wilensky helped Appellant remove the robe, attended to her wounds, called 911, and then assisted a police officer in putting out the fire by pouring water on the robe. (App. 197-99, 257-59.)

Appellant sustained burns over nineteen percent of her body, primarily her upper body and arms. By the time the fire had been extinguished, what remained of the robe

2

was insufficient to permit flammability testing pursuant to the protocols outlined in the Flammable Fabrics Act. See 16 C.F.R. § 1610 et seq. However, at the request of Easter Seals, Affiliated Engineering Laboratories subjected the remnants to "simplified" tests, from which it concluded that the robe was "not highly flammable" and was made of material "suitable for clothing." (App. 78-79.) Appellee also performed flammability tests on an exemplar robe from the same manufacturer. According to Appellee's textile consultant, based on her review of the data, "the face side of the fabric burned at a rate two to three times more slowly than the minimum burning rate permitted by law" and the back side "had a much slower burn rate." (App. 75.)

Appellant filed a complaint in New Jersey Superior Court on April 1, 2005, alleging, in relevant part:

> Defendants placed into the stream of commerce a defective product, namely, the aforesaid robe, in violation of the New Jersey Product Liability Act, N.J.S.A. 2A:58C-1 et seq. Specifically, defendants designed, manufactured, distributed and/or sold an unreasonably flammable robe, and failed to adequately warn plaintiff Joanne Toms of the unreasonable flammability of the robe.

(App. 5, ¶ 5.) Appellee removed the action to the United States District Court for the District of New Jersey on May 16, 2005 based on diversity jurisdiction. After Appellant indicated that she would not be submitting an expert report to support her product liability claim, the District Court authorized the parties to move for summary judgment, which Appellee did. On September 28, 2007, the District Court entered summary judgment in favor of Appellee. Toms appeals.

3

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over the District Court's entry of summary judgment, viewing the underlying facts and all reasonable inferences therefrom in the light most favorable to Appellant, the non-moving party.  See Norfolk Southern Ry. v. Basell USA Inc., 512 F.3d 86, 91 (3d Cir. 2008).  Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).  Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Throughout the course of this action, Appellant has alleged two strict liability claims: a defective product claim and a failure to warn claim.  However, it has not been clear at any point during this litigation whether her defective product claim was based on a design defect or a manufacturing defect theory.[1]  The District Court proceeded under a

---

[1]In her complaint, Appellant alleged that "defendants designed, manufactured, distributed and/or sold an unreasonably flammable robe." (App. 5.)  In her opposition to Defendant's motion for summary judgment, she alleged that based on the lay testimony, she was able to "establish a *prima facie* case for the unreasonable flammability of the robe," while disclaiming any intention to rely on the doctrine of *res ipsa loquitor*.  (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., D. Ct. Dkt. # 24, 10.)  Most recently, in her appeal brief, she states that she "brought the within action alleging . . . strict liability in tort for a defective robe." (At. Br. 6.)  None of these descriptions of her claim differentiate between design and manufacturing defects, nor does Appellant at any time clearly delineate the law on which she relies.

4

theory of defective design, although its analysis at times conflated the legal principles under which the two types of claims are evaluated. We conclude that, under either theory, the entry of summary judgment in favor of Appellee was proper.

Under New Jersey law, a defective product claim may proceed as follows:

A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C-2.

The District Court construed Appellant's claim as one of a design defect and concluded that summary judgment was proper because Appellant did not assert an alternative design theory, nor did she offer testimony sufficient to rule out other possible causes of the incident. The District Court emphasized Appellant's failure to submit expert testimony in support of her claim. A design defect claim posits that the product was designed in such a way that renders it "not reasonably fit, suitable or safe for its intended purpose." N.J. Stat. Ann. § 2A:58C-2. To prevail on such a claim, "[a] plaintiff must prove either that the product's risks outweighed its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm." Lewis v. Am. Cyanamid Co., 715 A.2d 967, 980 (N.J. 1998); see also Smith v. Keller Ladder Co., 645 A.2d 1269, 1271 (N. J. Super. Ct. App. Div. 1994). New Jersey

5

has adopted a seven-factor "risk-utility" test to gauge whether a product was defectively designed. See Johansen v. Makita U.S.A., 607 A.2d 637, 642 (N.J. 1992); see also Smith, 645 A.2d at 1271. As the District Court observed, the existence of a design defect is frequently proven through the testimony of an expert who has examined the product and offers an opinion on its design. See, e.g., Diluzio-Gulino v. Daimler Chrysler Corp., 897 A.2d 438, 441 (N.J. Super. Ct. App. Div. 2006); Rocco v. New Jersey Transit Rail Operations, Inc., 749 A.2d 868, 879 (N.J. Super. Ct. App. Div. 2000). Here, with or without expert testimony, Appellant has neither offered evidence of a reasonable alternative design for the robe, nor has she made a showing that the risks involved in wearing the robe in question outweigh its utility notwithstanding the lack of a reasonable alternative design. Thus, while Appellant may be correct that New Jersey law does not *require* proof of a reasonable alternative design or expert testimony to prove a design defect, we agree that, to the extent that Appellant intended to allege a design defect claim, she has failed to carry her burden and, accordingly, that summary judgment was appropriate.

To the extent Appellant was alleging a manufacturing defect claim, we similarly conclude that she has not offered evidence sufficient to sustain her burden of proof. To demonstrate a manufacturing defect, a plaintiff must prove that the product was not manufactured according to its design specifications. See Myrlak v. Port Auth. of N.Y. & N.J., 723 A.2d 45, 52 (N.J. 1999). In Scanlon v. General Motors Corp., 326 A.2d 673

6

(1974), the New Jersey Supreme Court set out three means by which a plaintiff could demonstrate the existence of a manufacturing defect: (1) direct evidence that the defect arose in the hands of the manufacturer; (2) circumstantial evidence which would permit an inference that a dangerous condition existed prior to sale; for instance, "the age and prior usage of the product in relation to its expected life span, durability and effective operability without maintenance"; or (3) by negating other causes of the failure of the product for which the defendant would not be responsible, in order to create an inference that the defect was attributable to the manufacturer.[2] See id. at 678-79. Depending on the complexity of the product, a plaintiff might be required to present expert testimony in order to rule out other likely explanations for the incident. See id. at 679; see also Lauder v. Teaneck Volunteer Ambulance Corps, 845 A.2d 1271, 1277 (N.J. Super. Ct. App. Div. 2004) ("[W]here the allegedly defective product involves a complex instrumentality, a plaintiff is required to provide expert testimony."). As the Scanlon court further noted, "the mere occurrence of an accident is not sufficient to establish that the product was not

---

[2] A plaintiff may also rely on an inference that a product is defective where the incident that harmed the plaintiff was (1) of a kind that ordinarily occurs as a result of a product defect; and (2) was not, in the particular case, solely the result of causes other than a product defect existing at the time of sale or distribution. See Restatement (Third) of Torts: Products Liability § 3 (1997), as adopted by Myrlak v. Port Auth. of N.Y. & N.J., 723 A.2d 45, 55-56 (N.J. 1999). This test has been labeled the indeterminate product defect test, "because its use is limited to those product liability cases in which the plaintiff cannot prove a specific defect." Myrlak, 723 A.2d at 56. Because Appellant here argues that the defect is the robe's unreasonable flammability, we conclude that this test does not apply and, therefore, do not consider it any further.

7

fit for ordinary purposes." Id. at 677.

Appellant clearly does not offer any direct evidence of a manufacturing defect. We agree with the District Court that Appellant failed, through expert testimony or otherwise, to negate other possible causes of the incident, such as that the weather conditions caused the match to explode, or that the match contained an unusual accelerant. Rather, Appellant claims that she may rely on her own testimony and that of Philip Wilensky to demonstrate that the robe was defective in that it was unreasonably flammable.

Appellant summarizes her testimony as follows:

First, the robe exploded upon contact with a match. Second, following the explosion, the fire expeditiously spread over Mrs. Toms' body in a matter of seconds. Third, Mr. Wilensky observed the flames leaping from Mrs. Toms' body thereby evidencing that the flames were more than a mere fire, but, rather, were burning at an increased rate. Fourth, the robe disintegrated into almost nothing leaving little of the robe left for testing.

(At. Br. 14.) Appellant relies on five cases to support her assertion that she can prove her claim solely through lay evidence demonstrating the existence of a defect in the robe. See Hollister v. Dayton Hudson Corp., 201 F.3d 731 (6th Cir. 2000); Wilson v. Bradlees of New England, Inc., 96 F.3d 552 (1st Cir. 1996); Howard v. McCrory Corp., 601 F.2d 133 (4th Cir. 1979); LaGorga v. Kroger Co., 275 F. Supp. 373 (W.D. Pa. 1967), aff'd, 407 F.2d 671 (3d Cir. 1969); DiMaso v. Wieboldt Stores, Inc., 347 N.E. 2d 466 (Ill. App. Ct. 1976). While we do not quarrel with Appellant's argument that she is not *required* to present expert testimony to demonstrate that the robe was unreasonably flammable, we

8

agree with the District Court that Appellant's reliance on these cases for support is misplaced. The facts presented by Appellant differ in significant respects from those in Howard and LaGorga. See Howard, 601 F.2d at 138 ("When first seen, the flames were shooting a foot over Bobby's head and Bobby looked much like a ball of fire. Such evidence would indicate that the clothing worn by Bobby ignited quickly and burned rapidly with intensity."); LaGorga, 275 F. Supp. at 377-78 (reciting testimony that "[y]ou could see flames shooting out the back of the jacket," that several people tried but were unable to extinguish the fire, that a retired firefighter saw the child "coming down the street full blaze, up over his head, just like a ball of fire coming down" and that in his experience as a firefighter, "'no cloth that [he had] seen burned like that'").

Appellant claims that the District Court failed to address the "facts" that "(1) the fire spread abnormally quickly over Mrs. Toms' robe and body; (2) Mr. Wilensky saw the flames leap from Mrs. Toms' head; and (3) the fire burned so thoroughly that nearly nothing remained of the robe except disintegrated charred remains." (At. Br. 19.) Contrary to Appellant's suggestions, her testimony does not establish a time frame for the fire, nor that it burned "abnormally quickly" or had unusual burning characteristics. In fact, Mr. Wilensky's testimony establishes that he assisted Mrs. Toms' in removing the clothing from her body, brought her inside, called 911, and returned outside to assist the police officer in putting out the fire. (App. 197-99, 257-59.) The fact that the robe had nearly burned itself out by the time all of these events had transpired does not establish

9

that the robe was unusually flammable. While we agree with Appellant that under certain circumstances, lay testimony may be sufficient to make out such a claim, under these circumstances it was not. Accordingly, we will affirm the District Court's entry of summary judgment on Appellant's manufacturing defect claim.

Appellant also alleged that the robe failed to contain an adequate warning of its unreasonable flammability. The statute defines an "[a]dequate product warning or instruction" as "one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used . . . ." N.J. Stat. Ann. § 2A:58-C-4.

Appellant supports her failure to warn claim with the same cases as her product defect claim, positing that her lay testimony is sufficient to establish that the robe was unreasonably flammable and that it therefore should have contained a warning. In a failure to warn claim, "the defect is the absence of a warning to unsuspecting users that the product can potentially cause injury." Coffman v. Keene Corp., 628 A.2d 710, 716 (N.J. 1993); Campos v. Firestone Tire & Rubber Co., 485 A.2d 305, 308 (N.J. 1984), superseded by statute on other grounds as stated in Dewey v. R.J. Reynolds Tobacco Co., 577 A.2d 1239 (N.J. 1990) (explaining that, under New Jersey law, manufacturers have a duty to warn "foreseeable users of all hidden or latent dangers that would arise out of a

10

reasonably anticipated use of [their] product[s]"). Thus, before reaching the question of whether the product contained an adequate warning, plaintiff must first establish that there was a latent danger of which the manufacturer had a duty to warn. See Mathews v. University Loft Co., 903 A.2d 1120, 1125 (N.J. Super. Ct. App. Div. 2006); see also Magistrini v. One Hour Martinizing Dry Cleaning, 109 F. Supp. 2d 306, 311 (D.N.J. 2000) ("In a failure to warn case, to show that a product is defective, and ultimately to establish product-defect causation, the plaintiff must first establish that defendant had a duty to warn."); James v. Bessemer Processing Co., Inc., 714 A.2d 898, 908 (N.J. 1998) ("Initially, the plaintiff must establish that the defendant had a duty to warn. To establish such a duty, the plaintiff must satisfy 'a very low threshold of proof in order to impute to a manufacturer sufficient knowledge to trigger the duty to provide a warning of the harmful effects of its product.'"); Michalko v. Cooke Color & Chem Corp, 451 A.2d 179, 187 (N.J. 1982) (holding that "a manufacturer is under a duty to warn owners and foreseeable users of the dangers of using a particular machine if, without such a warning, the machine is not reasonably safe"). Because Appellant failed to offer evidence sufficient to demonstrate that her robe was excessively flammable, she has not demonstrated that Appellee had a duty to warn her of such a risk. Accordingly, we agree with the District Court that summary judgment in favor of Appellee on this claim was proper.

Based on the foregoing, we will affirm the judgment of the District Court.

11